75 N.Y.2d 751 (1989)
In the Matter of Mental Hygiene Legal Services, on Relation of Angel Cruz, Appellant,
v.
Renate Wack, as Executive Director of Kirby Forensic Psychiatric Center, et al., Respondents.
Court of Appeals of the State of New York.
Argued November 21, 1989.
Decided December 19, 1989.
Stephen J. Harkavy, Ronald N. Gottlieb and Marvin Bernstein for appellant.
Robert Abrams, Attorney-General (Robert L. Schonfeld and Thomas P. Dorsey of counsel), for Renate Wack, respondent.
Robert M. Morgenthau, District Attorney (Karen L. Mallory, Mark Dwyer and Susan Gliner of counsel), for People of the State of New York, respondent.
Chief Judge WACHTLER and Judges SIMONS, KAYE, TITONE, HANCOCK, JR., and BELLACOSA concur; Judge ALEXANDER dissents and votes to reverse in an opinion.
*752 MEMORANDUM.
The order of the Appellate Division should be affirmed and the certified question answered in the affirmative.
In this habeas corpus proceeding brought pursuant to Mental Hygiene Law § 33.15, Supreme Court determined that petitioner was no longer mentally ill and ordered his release from custody.[1] The Appellate Division agreed with Supreme Court only insofar as it found petitioner to be no longer dangerously mentally ill, but otherwise rejected Supreme Court's findings and instead found that petitioner was in need of further retention, albeit in a nonsecure facility. We now conclude that the evidence in the record supports the finding of the Appellate Division.
The evidence, adduced through the testimony of petitioner's treating psychiatrists and that of the chief psychiatrist at the facility where petitioner was institutionalized, as well as through the daily record of petitioner's behavior, demonstrated that petitioner continued to suffer from a severe *753 mental disorder. Even petitioner's own expert diagnosed petitioner as suffering from "very severe" antisocial and paranoid personality disorders and, like the other experts, recommended that petitioner be retained in some level of custody within the State mental hygiene system.
Mental Hygiene Law § 1.03 (20) defines mental illness as "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment and rehabilitation." Contrary to petitioner's argument, that definition does not exclude disorders such as that suffered by petitioner, solely because "an effective mode of treatment [has] remained elusive" (Matter of Torsney, 47 N.Y.2d 667, 683, n 6). It is enough that petitioner, as every psychiatric expert that testified at the hearing agreed, requires further in-patient care and attention.
Even petitioner's expert, while objecting to the label "mental illness" to describe petitioner's condition, agreed with the disposition directed by the Appellate Division. Although that court failed to refer to the governing statutes, its conclusion that petitioner should not be released from in-patient status but should, instead, be transferred to a nonsecure facility as necessary for readjustment to life outside mental hospitals, constitutes the requisite factual findings to justify retaining petitioner under Mental Hygiene Law § 33.15 (b) and § 9.01.[2]
Finally, contrary to petitioner's argument, the Appellate *754 Division's reference to "[w]hether petitioner is actually mentally ill" (148 AD2d, at 343) cannot fairly be deemed, within the context of that court's opinion, to indicate that the court avoided deciding whether petitioner remained "in need of involuntary care and treatment" within the meaning of Mental Hygiene Law § 9.01. Rather, the court was merely acknowledging that petitioner's current condition would be reviewed on the Commissioner's pending retention application pursuant to CPL 330.20, as the court itself noted.
ALEXANDER, J. (dissenting).
I cannot accept the majority's conclusion that the Appellate Division made the requisite findings under the Mental Hygiene Law to permit the retention of petitioner in a nonsecure facility. Rather, that court determined that petitioner should be retained because even his own expert, who testified that petitioner was not mentally ill, nevertheless favored a gradual release, with some time spent in a nonsecure facility. The court expressly reserved the question of whether petitioner was mentally ill: "While we hold that the trial court's finding that petitioner is not suffering from a dangerous mental disorder is not against the weight of the evidence, and therefore conclude that petitioner should not be in a secure facility, we disagree with the trial court that he should be released from in-patient status, as opposed to merely transferred to a nonsecure facility. In reaching this result, we think it sufficient that even petitioner's own expert, a staunch proponent of the view that petitioner is not mentally ill, nevertheless favors only a gradual release, with a period of time spent in a nonsecure facility designed to readjust petitioner to life outside mental hospitals. Whether petitioner is actually mentally ill or not is a question that can be decided on the Commissioner's pending application for a subsequent retention order, which should now, in view of petitioner's transfer, be deemed an application for a recommitment order pursuant to CPL 330.20 (14)." (148 AD2d 341, 343 [emphasis added].)
It is clear from this language that the court impermissibly deferred to the Commissioner the determination of whether petitioner presently suffers from a mental illness. To do so in this habeas corpus proceeding pursuant to Mental Hygiene Law § 33.15 (b) was error. That section mandates the release of an involuntarily retained patient upon the court's finding that the patient "is not mentally disabled or that he is not in *755 need of further retention for in-patient care and treatment" (Mental Hygiene Law § 33.15 [b]). A determination that a patient has a "need for retention" requires a showing that the patient is "in need of involuntary care and treatment in a hospital" which in turn requires a demonstration that the patient "has a mental illness" (Mental Hygiene Law § 9.01). As Supreme Court properly concluded, absent a finding that petitioner presently suffers from a mental illness, he is entitled to release.
By concluding that the Appellate Division implicitly found that petitioner suffered from a mental illness, despite that court's statement to the contrary, the majority deprives petitioner of that court's factual review of the record  a record upon which Supreme Court, the only other court with fact-finding jurisdiction, found that petitioner was not presently suffering from a mental illness.
Accordingly, I dissent and vote to remit the matter to the Appellate Division for a finding as to whether petitioner presently suffers from a mental illness.
Order affirmed, without costs, and certified question answered in the affirmative in a memorandum.
NOTES
[1] Petitioner was committed to a secure psychiatric facility in the custody of the Commissioner of Mental Health in 1979, pursuant to CPL 330.20, having been found not guilty by reason of mental disease or defect for the murder of his pregnant common-law wife and three-year-old stepson. At the time of his commitment, petitioner was diagnosed as suffering from a dangerous mental disorder, paranoid schizophrenia, that caused him to think that his common-law wife and her son were possessed by the devil, and to beat, bludgeon and strangle them to death.
[2] Mental Hygiene Law § 33.15 (b), provides: "Upon the return of such a writ of habeas corpus, the court shall examine the facts concerning the person's alleged mental disability and detention. The evidence shall include the clinical record of the patient and medical or other testimony as required by the court. The court may review the admission and retention of the person pursuant to the provisions of this chapter. The court shall discharge the person so retained if it finds that he is not mentally disabled or that he is not in need of further retention for in-patient care and treatment" (emphasis added).

In turn, Mental Hygiene Law § 9.01 provides:
"As used in this article:
"`in need of care and treatment' means that a person has a mental illness for which in-patient care and treatment in a hospital is appropriate
"`in need of involuntary care and treatment' means that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person's welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment
* * *
"`need for retention' means that a person who has been admitted to a hospital pursuant to this article is in need of involuntary care and treatment in a hospital for a further period" (emphasis added).