OPINION OF THE COURT
Michael D. Stallman, J.
At issue is the scope of the jury’s role in a rehearing and review proceeding concerning the continued secure retention of a criminal defendant-insanity acquittee. (CPL 330.20 [16]; Mental Hygiene Law § 9.35.)
Respondent moves to dismiss on the ground that the relief sought, viz., jury review of the patient’s dangerous mental disorder and need for secure retention, fails to state a cause of action; in the alternative, respondent moves for partial dismissal of the request for jury review of those issues. The District Attorney, as the prosecutor of the underlying criminal action, and therefore a proper party, seeks dismissal of that portion of the proceeding that seeks a jury trial on the question of dangerousness and need for secure retention.
PRIOR PROCEEDINGS
Petitioner was arrested, indicted and tried for the murder and dismemberment of Monica Beerle on August 19, 1989. In 1991, the criminal jury trial concluded with a jury verdict of not responsible by reason of mental disease or defect. Thereafter, at a hearing on his mental condition, the court found that petitioner had a dangerous mental disorder and accordingly committed him to the Kirby facility, a secure State mental hospital.[1]
After extensive and protracted motion practice, the State’s first retention application came on for a hearing before Justice *76 Ramos in 1993, who found that the patient continued to have a dangerous mental disorder which required continued secure retention. After another hearing earlier this year, Justice Ramos found a continued dangerous mental disorder, and issued a second order of retention. Petitioner seeks a jury rehearing and review of that order.
I
CPL 330.20 (16) provides, inter alia, that if a criminal defendant-insanity acquittee is dissatisfied with any order of commitment, retention or recommitment, he or she may obtain a "rehearing and review” pursuant to Mental Hygiene Law § 9.35.
Mental Hygiene Law § 9.35, applicable to all involuntarily confined psychiatric patients, provides that any such person "who has been denied release” may seek a "rehearing and a review” before a different Justice and a jury. (See, Matter of Robert C. v Wack, 167 Misc 2d 677 [part I for this court’s analysis of the statutory and constitutional history].)
II
Petitioner asserts that Mental Hygiene Law § 9.35 is merely a procedural vehicle, intended only to implement the right to a jury trial. He further argues that its incorporation by reference in CPL 330.20 (16) means that the jury should finally determine all retention issues under CPL 330.20, including that of dangerous mental disorder and the need for secure retention, or transfer to a nonsecure, civil mental hospital if the jury finds him no longer dangerous. Petitioner is incorrect.
The clear wording of Mental Hygiene Law § 9.35 demonstrates that it is much more than a procedural mechanism. Rather, it specifically delimits the scope of jury review to "mental illness” and the "need for retention”. Its inclusion in CPL 330.20 (16) cannot be read as expanding the scope of jury review to other issues, such as dangerous mental disorder arising only under CPL 330.20, applicable only to former criminal defendants. CPL 330.20 (17) specifically states: "Subject to the limitations and provisions of this section, a defendant committed to the custody of the commissioner pursuant to this section shall have the rights granted to patients under the mental *77 hygiene law.” Thus, petitioner’s right to a jury trial, the scope of the trial and the issues for the jury’s determination are not greater than those defined by Mental Hygiene Law § 9.35.
CPL 330.20 was the product of an intensive reexamination and redrafting of New York law governing the insanity defense and the future disposition of those defendants found not responsible by reason of mental disease or defect. (L 1980, ch 548.) It was intended to "better ensure the protection of the public from future dangerous acts of individuals found not responsible, while safeguarding the rights of such individuals”. (1980 McKinney’s Session Laws of NY, at 1880.) The Legislature created a detailed statutory scheme which coordinated the Criminal Procedure Law with the Mental Hygiene Law provisions generally applicable to involuntarily committed mental patients. (See, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 330.20.) Where the Legislature believed that new procedural and substantive provisions, including definitions, were required for criminal defendant psychiatric patients, it created them; otherwise, the Legislature incorporated by reference provisions from the Mental Hygiene Law. This court cannot assume, as does petitioner, that the legislative reference to Mental Hygiene Law § 9.35 in CPL 330.20 was a mistake or an oversight. (Cf. contra, People v Diaz, NYLJ, Aug. 1, 1983, at 15, col 3.) Rather, the textual and historical context indicates otherwise.
The definitions contained in CPL 330.20 further illustrate that the choice between redrafting or incorporation by reference was careful and deliberate. CPL 330.20 contains separate definitions for "[djangerous mental disorder” (CPL 330.20 [1] [c]), "[m]entally ill” (CPL 330.20 [1] [d]), and "[s]ecure facility” (CPL 330.20 [1] [b]) that do not exist in the Mental Hygiene Law. The Mental Hygiene Law definition of "[mjental illness” (Mental Hygiene Law § 1.03 [20]) differs from the CPL definition of "[mjentally ill” (CPL 330.20 [1] [d]). Significantly, the CPL definition of "[djangerous mental disorder” (CPL 330.20 [1] [c]) incorporates by reference the Mental Hygiene Law definition of "[mjental illness”, not the CPL definition: "(c) 'Dangerous mental disorder’ means: (i) that a defendant currently suffers from a 'mental illness’ as that term is defined in subdivision twenty of section 1.03 of the mental hygiene law, and (ii) that because of such condition he currently constitutes a physical danger to himself or others.”
When the Legislature incorporated the Mental Hygiene Law provisions into the Criminal Procedure Law, it is clear that it *78 intended to incorporate those provisions verbatim, with the same form and meaning they have under the Mental Hygiene Law.
The Legislature could have enacted different language in CPL 330.20 (16), specifically listing the jury issues on the rehearing and review. It could have omitted the cross-reference to Mental Hygiene Law § 9.35 and could have substituted a general, sweeping right to jury trial without specifying issues. It did not. The absence of different language, and the decision not to enact a specific provision for jury determination of the issues of "dangerous mental disorder” and need for retention in a secure facility or transfer to a nonsecure facility, can mean only one thing: The Legislature excluded, and intended to exclude, those issues from jury determination.
Ill
Petitioner urges that constitutional principles of due process and equal protection mandate interpretation of the statutory framework as requiring that the jury determine the issues of dangerous mental disorder and secure retention. Petitioner is incorrect. (See, Matter of Robert C. v Wack, 167 Misc 2d 677, supra [part III for this court’s analysis of the constitutional issues].)
The liberty interest to which the right to a jury trial attaches is the same as the issue defined by the statutes for jury rehearing and review: the need for involuntary institutionalization because of mental illness. Given the incorporation by reference of the civil statute (Mental Hygiene Law § 9.35) into the criminal (CPL 330.20), the Legislature accorded insanity acquittees the same statutory right to jury review as civil mental patients. The current statutory scheme is thus constitutional as written.
The relative degrees of dangerousness among committed mental patients, and the levels of security appropriate under the circumstances, are not the kind of issues traditionally determined by juries. The preponderant current view is that a CPL 330.20 patient’s continued secure confinement is exclusively a question for the court, and thus not within the scope of the jury review on a rehearing. (See, Matter of Maureen A. v Wack, 153 Misc 2d 600; Matter of Soto, Sup Ct, NY County, May 20, 1992, index No. 68221/83; Matter of McGrow, Sup Ct, NY County, Oct. 24, 1994, index No. 68423/82.) No constitutional principle compels a departure from this view.
Accordingly, the issue of whether the patient has a "dangerous mental disorder” or whether he is only "mentally ill” *79 under the CPL definition is not a question for final jury determination. Just because these issues were properly before, and determined by, the Justice at the nonjury hearing sought to be reviewed here, does not make them jury questions. Both classifications require a finding of mental illness under the Mental Hygiene Law definition and each requires involuntary custody. The jury must determine the liberty interest that triggers the right to jury review — the existence of mental illness and the need for retention (i.e., involuntary confinement); all other issues are for the court and not the jury.[2]
IV
Finally, petitioner argues that CPLR 4102 entitles him to a jury trial on any question of fact. Petitioner is incorrect. (See, Matter of Robert C. v Wack, 167 Misc 2d 677, supra [part IV].)
CONCLUSION
The scope of the jury questions in this rehearing and review proceeding is limited to the issues of the patient’s current mental illness and the need for retention. The issue is the patient’s condition at the time of the review and rehearing, not at the time of the hearing being reviewed. (See, Matter of Maureen A. v Wack, supra.) In order to make a full record and inform the conscience of the court, the court will use the jury as an advisory panel on the court’s ultimate issue of whether the patient continues to have a dangerous mental disorder and consequently requires retention in a secure facility. (See, CPLR 4212.)[3]
Accordingly, the State’s motion to dismiss is granted, in part, only to the extent of limiting the jury issues as indicated, and otherwise denied.

. When the jury in a criminal trial returns a verdict of not responsible by reason of mental disease or defect (see, CPL 220.15), the verdict establishes that the defendant committed the criminal acts charged, but lacked responsibility because of mental illness, thereby rendering a criminal sentence inappropriate. (See, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 330.20.) Upon such a verdict, the court issues an examination order and holds a hearing to determine the defendant’s status. (CPL 330.10, 330.20.) The initial hearing determines if the defendant has a "dangerous mental disorder” (CPL 330.20 [1] [c]), or is mentally ill as specifically defined by CPL 330.20 (1) (d) (cf., Mental Hygiene Law § 1.03 [20] [a different definition of mental illness]), or is not mentally ill. The defendant’s disposition follows from the finding. "Dangerous mental disorder” defendants are committed to secure, State psychiatric facilities. (CPL 330.20 [1] [b]; [6].) "Mentally ill” defendants are civilly committed to nonsecure mental hospitals. (CPL 330.20 [7].) Nonmentally ill defendants are discharged subject to orders of conditions. (CPL 330.20 [7].) Committed patients have their cases periodically reviewed at subsequent retention hear *76 ings. (CPL 330.20 [8], [9].) Similarly, the fact that petitioner had a dangerous mental disorder at the times when he was previously so adjudicated are not in dispute at this trial; the prior adjudications are conclusive and binding.

. The advisability of transfer from a secure facility to a nonsecure psychiatric hospital is not a question under Mental Hygiene Law § 9.35; thus it cannot be a jury question under CPL 330.20 (16). (See, Matter of Robert C. v Wack, supra [part III for this court’s analysis of this issue].)

. In order to avoid jury confusion or suggestion, the court will not reveal to the jury that its role is advisory in part.