OPINION OF THE COURT
 

 Levine, J.
 

 In 1987, with the permission of the court and the consent of the People, defendant Francis S. entered a plea of not responsible by reason of mental disease or defect to charges of attempted assault in the first degree and possession of a weapon in the third degree
 
 (see,
 
 CPL 220.15). Before accepting that plea, the court made the requisite finding "that each element of [each] offense * * * charge[d] in the indictment would be established beyond a reasonable doubt” (CPL 220.15 [5] [a]). Following a psychiatric examination and initial hearing to assess his present mental condition
 
 (see,
 
 CPL 330.20 [2], [6]), he was determined to be a "track 2” insanity acquittee, that is, mentally ill but not suffering from a dangerous mental disorder
 
 (see, Matter of Jill ZZ.,
 
 83 NY2d 133, 137), and was remanded to the custody of the Commissioner of Mental Health (the Commissioner) to be civilly committed for a four-month period
 
 (see,
 
 CPL 330.20 [7]). The hearing court also issued a five-year order of conditions, which required defendant,
 
 inter alla,
 
 to comply with the terms of the treatment plan prescribed for him by the Office of Mental Health (OMH).
 

 Pursuant to that plan, defendant was treated on both an inpatient basis in a nonsecure facility and on an outpatient basis at various State psychiatric clinics over the next several years. However, in early 1991, he unilaterally changed his treatment center in violation of his order of conditions.
 

 That order of conditions was due to expire August 7, 1992. On August 4, 1992, the Commissioner applied for a recommitment order seeking to have S. placed in a secure facility on the ground that because of his mental condition he currently presented a danger to himself or others
 
 (see,
 
 CPL 330.20 [14]; CPL 330.20 [1] [c]). OMH reached this conclusion based on S.’s persistent noncompliance with the order of conditions, his psychiatric history, and the circumstances underlying his arrests on several occasions during 1991 and 1992. Although S. could not initially be located and failed to appear on the recommitment application’s return date, he was brought before the hearing court following his arrest on new criminal charges.
 

 S. moved to dismiss the application on both constitutional and statutory jurisdictional grounds. The court denied the mo
 
 *560
 
 tian in all respects and held a hearing to determine whether S. currently suffered from a dangerous mental disorder — the requisite statutory basis for recommitment under CPL 330.20 (14).
 

 The hearing evidence consisted primarily of expert psychiatric evaluations and evidence of S.’s treatment history and his numerous arrests in the more than five years since he was permitted to plead not responsible. Six psychiatrists testified, three on behalf of the State petitioners and three on behalf of defendant. All six agreed that S. was suffering from a mental disorder; the primary source of disagreement was over whether S. currently suffered from a dangerous mental disorder requiring inpatient care. However, even S.’s expert witnesses agreed that if he were to revert to alcohol and drug abuse upon release, his condition would deteriorate.
 

 At the conclusion of the hearing, Supreme Court found that S. was mentally ill. The court also found it highly likely that upon release, S. would revert to uncontrollable behavior and would relapse into substance abuse. The court nevertheless felt constrained under the authority of
 
 Matter of Torres (People)
 
 (166 AD2d 228,
 
 affd for reasons stated below
 
 78 NY2d 1085) to deny the recommitment application because, as a result of his present hospitalization and enforced medication, S.’s dangerous behavior had diminished.
 

 The Commissioner of Mental Health and the District Attorney (who had appeared in support of the recommitment application as permitted by CPL 330.20 [14]) appealed. A three-Justice majority at the Appellate Division (with one Justice dissenting) concurred with Supreme Court’s finding of mental illness but held that S.’s temporary stabilization in the hospital did not preclude a finding of current dangerousness (206 AD2d 4, 6-7). Upon its review of the hearing evidence, the Appellate Division found that S. was suffering from a dangerous mental disorder and, rejecting defendant’s constitutional and jurisdictional claims, reversed and granted the recommitment application
 
 (id.,
 
 at 21-22). That Court granted defendant leave to appeal, and we now affirm.
 

 Initially, we reject defendant’s contention that the Appellate Division’s finding that he was suffering from a dangerous mental disorder is erroneous.
 
 [1]
 
 Both Supreme Court and the Appellate Division found that defendant suffered from a
 
 *561
 
 mental illness, the first element of a dangerous mental disorder, and because that finding is supported by evidence in the record it is beyond our further review (see,
 
 Dalton v Educational Testing Serv.,
 
 87 NY2d 384, 391;
 
 Humphrey v State of New York,
 
 60 NY2d 742, 743). Moreover, Supreme Court applied an erroneous legal standard in finding that the second element of a dangerous mental disorder — his current dangerousness as a result of his mental illness — had not been established solely because S.’s condition was stabilized during hospitalization
 
 (see, Matter of George L.,
 
 85 NY2d 295, 303-305). On the other hand, the Appellate Division majority quite properly based its determination that S. had a dangerous mental disorder on his history of prior relapses into violent behavior and of recurrent substance abuse and noncompliance with treatment programs upon release
 
 (see, id.,
 
 at 308). Thus, in our view, the Appellate Division’s finding of S.’s present dangerousness more nearly comports with the evidence in the record
 
 (see, Matter of Mental Hygiene Legal Servs. v Wack,
 
 75 NY2d 751, 752).
 

 We likewise reject S.’s argument that statutory predicates for the hearing court’s jurisdiction were not met. S. argues that, because he was not served with notice of the application for recommitment until after his order of conditions had expired, the application was not timely. However, CPL 330.20 (14) does not require that notice be served upon the defendant during the pendency of the order of conditions, but instead, requires only that the application be made within that time frame
 
 (see, id.
 
 ["At any time during the period covered by an order of conditions an application may be made * * * to the court * * * for a recommitment order”]), and that the defendant be "give[n] written notice of the application”
 
 (id.).
 
 As there is no dispute that the Commissioner applied for the recommitment order prior to the date the order of conditions was to expire, the jurisdictional requirement of subdivision (14) was met.
 

 S. also maintains that the hearing court lacked jurisdiction to entertain the recommitment application because it was not supported by a legally sufficient psychiatric affidavit as
 
 *562
 
 required by CPL 330.20 (20). According to that provision, any application by the Commissioner for an order pursuant to CPL 330.20 must be supported by an affidavit from at least one psychiatric examiner setting forth the defendant’s clinical diagnosis, the examiner’s opinion with respect to the application, and a detailed analysis of the defendant’s mental condition which caused the examiner to formulate that opinion (CPL 330.20 [20]). We agree with the Appellate Division that the affidavit of Dr. Castillo and accompanying exhibits satisfied the statutory criteria in all respects. While Dr. Castillo’s affidavit could have been more detailed, it contained a diagnosis (bipolar disorder, manic) and a basis for concluding that S. was suffering from a dangerous mental disorder, namely S.’s history of inpatient psychiatric treatment, his failure to comply with the order of conditions, and the circumstances of two recent arrests, the details of which were contained in correspondence from the District Attorney attached to the affidavit. Nor is there any jurisdictional fatality with respect to S.’s remaining objection to the application, that it was made with the knowledge it contained an erroneous designation for the place of service upon him. As we have explained, it is the making of the application, and not the service of notice, that establishes jurisdiction under the statute.
 

 We are similarly unpersuaded by the constitutional challenges of S. to the recommitment procedures of CPL 330.20 (14) as applied in this case. Stripped to its essentials, his argument is that, if at the initial hearing after being found not responsible by reason of mental illness, the acquittee is found not to have a dangerous mental disorder, due process and equal protection principles prohibit the Legislature from denying the acquittee the procedural safeguards accorded other persons solely committed through the civil procedures of the Mental Hygiene Law. As we have repeatedly recognized, however, the provisions of CPL 330.20 for imposing orders of conditions through which the criminal court retains supervisory authority over insanity acquittees, and the section authorizing recommitment upon a finding that an acquittee has a dangerous mental disorder, reflect a legislative judgment that, having concededly once engaged in criminal conduct as a result of mental illness, the insanity acquittee continues to present a serious risk of a recurrence of dangerous behavior derived from mental illness. Thus, in
 
 People v Stone
 
 (73 NY2d 296, 302), we said:
 

 "The plain purpose of a recommitment order within that statutory scheme is to keep a criminal
 
 *563
 
 acquittee previously found through one of these devices not to suffer from a dangerous mental disorder and, thus, not thereby subject to the CPL procedural devices, within the CPL’s continued oversight,
 
 due to the potentiality of a dangerous mental
 
 disorder” (emphasis supplied).
 

 In
 
 Matter of Oswald N.
 
 (87 NY2d 98, 104), we recognized the inability of modern psychiatry to guarantee the safety of the public through effective treatment permanently removing the potentiality of recurrent violent acts by persons found not responsible by reason of mental illness, thereby justifying extended continuous supervision over the acquittee by the criminal court through an order of conditions. And in
 
 Matter of George L.
 
 (85 NY2d 295, 306,
 
 supra),
 
 we relied upon one legal commentator
 
 [2]
 
 who had demonstrated that the legislative judgment of the continued latent risk of recurrence of an insanity acquittee’s dangerous mental disorder has a sound basis in clinical studies of recidivism among insanity acquittees.
 

 The Supreme Court in
 
 Jones v United States
 
 (463 US 354, 365, n 13) held that the very imprecision of the field of psychiatry militates in favor of judicial deference to such legislative judgments:
 

 "the lesson we have drawn [from the uncertainty of diagnoses in the field of the psychiatry of violent behavior] is not that government may not act in the face of this uncertainty, but rather that courts should pay particular deference to reasonable legislative judgments”.
 

 Thus, as we have already held, equal protection principles do not prevent different treatment of insanity acquittees from other persons subject to civil commitment because acquittees may validly be regarded as a separate class, even when no longer diagnosed as having a dangerous mental disorder
 
 (see, Matter of Oswald N.,
 
 87 NY2d, at 105,
 
 supra).
 
 The holding in
 
 Oswald N.
 
 is controlling here on S.’s equal protection claim.
 

 The Legislature’s rationally based apprehension of significant risk that a person, whose mental illness resulted in the commission of a crime, may relapse into dangerousness, also surmounts due process concerns. The Supreme Court in
 
 Jones v United States (supra)
 
 sustained the validity of a provision
 
 *564
 
 imposing upon an insanity acquittee the burden of proof by a preponderance of the evidence to show either recovery from mental illness or lack of dangerousness, even in a statutory retention hearing that could be held well after acquittal. The reasons the Supreme Court found sufficient for permitting lesser procedural safeguards on initial commitment or in such a retention hearing than are required for otherwise civilly committed persons are equally applicable here. Just as in the case of initial commitment or retention, upon a recommitment there are stronger counterbalancing legitimate State interests of public safety in the case of a criminally insane acquittee than other candidates for civil commitment
 
 (Jones v United States, supra,
 
 at 366). There also remains a diminished concern as to the risk of an erroneous determination of mental illness based merely on "idiosyncratic behavior” because the acquit-tee’s mental illness-related conduct consisted of the commission of a crime, established beyond a reasonable doubt
 
 {id.,
 
 at 367). Placing the burden on the Commissioner of Mental Health and the District Attorney to establish at a recommitment hearing by a preponderance of the evidence that an acquittee has a dangerous mental disorder, together with other statutory procedural safeguards in CPL 330.20,
 
 [3]
 
 amply satisfy the requirements of procedural due process
 
 (Jones v United States, supra; People v Escobar,
 
 61 NY2d 431).
 

 The recommitment procedures of CPL 330.20 also comport with principles of substantive due process. As we have already demonstrated, recommitment of an insanity acquittee upon a finding of a dangerous mental disorder has a direct and substantial relationship with the State’s legitimate concern for the potentiality of the deterioration of the acquittee’s mental condition and relapse into dangerous behavior.
 

 Moreover, the recommitment procedures of section 330.20 bear a reasonable relation to the purpose for which the acquit-tee is recommitted, i.e., "to treat the individual’s mental illness and protect him and society from his potential dangerousness” (J
 
 ones v United States,
 
 463 US, at 368,
 
 supra).
 
 Since recommitment cannot be ordered except upon findings of both mental illness and dangerousness
 
 (see,
 
 CPL 330.20 [1] [c]; [14]),
 
 *565
 
 the statutory scheme does not run afoul of the holding in
 
 Foucha v Louisiana
 
 (504 US 71).
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . To prove that the insanity acquittee suffers from a dangerous mental disorder, the State must establish two facts: that the acquittee has a mental
 
 *561
 
 illness as defined in Mental Hygiene Law § 1.03 (20) that is, the acquittee is afflicted "with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment and rehabilitation” and that as a result of that condition, the acquittee "currently constitutes a physical danger to [him or herjself or others” (Mental Hygiene Law § 1.03 [20]; CPL 330.20 [1] [c]).
 

 [2]
 

 . Note,
 
 Rules for An Exceptional Class: The Commitment and Release of Persons Acquitted of Violent Offenses by Reason of Insanity,
 
 57 NYU L Rev 281, 295-296 (1982).
 

 [3]
 

 . As previously discussed, the application for recommitment must be accompanied by a sufficient affidavit of a psychiatric examiner (CPL 330.20 [20]); the recommitment order is subject to the same time limitations as are provided for commitment and retention orders (CPL 330.20 [1] [f]; [14]); and the acquittee can obtain a rehearing and review pursuant to the provisions of Mental Hygiene Law §§ 9.35 or 15.35 (CPL 330.20 [16]).