OPINION OF THE COURT
Donald J. Mark, J.
On August 7, 1987, the petitioner entered a plea of not responsible by reason of mental disease or defect pursuant to CPL 220.15 to the crimes of attempted assault in the first degree and criminal possession of a weapon in the third degree. Following various criminal and civil commitments in state psychiatric facilities, as partly chronicled in the cases of Francis S. v Stone (221 F3d 100, 102-107) and Matter of Francis S. (87 NY2d 554, 559-561),[1] the petitioner, in his latest proceeding on May 15, 2002, was adjudicated in County Court to be suffering from a dangerous mental disorder.
In accordance with CPL 330.20 (16), the petitioner requested a rehearing and review of that recommitment order via a jury trial in accordance with section 9.35 of the Mental Hygiene Law. Prior to and during the trial, various issues were resolved as explained in this decision.[2]
(1) The Constitutionality of CPL 330.20 (14)
The petitioner claimed that CPL 330.20 (14) is unconstitutional, because he has been committed both criminally and civilly in state psychiatric facilities for a period longer than he could have been incarcerated if he had been convicted of his charged crimes. A conviction for attempted assault in the first degree, the higher felony for which the petitioner was charged, *440 could have resulted in a maximum sentence of 2V3 years to 7 years’ confinement in a state correctional facility; the petitioner’s plea of not responsible by reason of mental disease or defect has resulted in his commitment to state psychiatric facilities for approximately 15 years.
The petitioner is perhaps referring to CPL 730.50 (3), which limits the period of time an incapacitated criminal defendant can be held in the custody of the Commissioner of Mental Health to two thirds of the maximum term of confinement authorized for the highest charged felony. However, this section is only applicable to a criminal defendant found not competent to stand trial and thereafter committed pursuant to subdivisions (1) and (2) of that section; it is not applicable to a criminal defendant who pleads not responsible by reason of mental disease or defect and is thereafter committed pursuant to CPL 330.20 (8) (see People v Lewis, 95 NY2d 539, 547, rearg denied 96 NY2d 755, cert denied 534 US 833).
Nevertheless, the petitioner’s attack on the constitutionality of section 330.20 (14) on that basis has been resolved by the United States Supreme Court in the case of Jones v United States (463 US 354), albeit involving a defendant in federal court who had pleaded not guilty by reason of insanity. There, the Court used this language to refute a claim similar to this petitioner’s: “petitioner clearly errs in contending that an acquitee’s hypothetical maximum sentence provides the constitutional limit for his commitment” (at 368), and “[t]he length of the acquitee’s hypothetical criminal sentence therefore is irrelevant to the purposes of his commitment” (at 369).
The Court of Appeals in the case of Matter of Francis S. (supra at 562-563, citing Matter of Oswald N., 87 NY2d 98, 104; Matter of George L., 85 NY2d 295, 306; People v Stone, 73 NY2d 296, 302) implied agreement with the United States Supreme Court. That Court’s holding was that the insanity acquitee, having been previously found not to be suffering from a dangerous mental disorder, could be constitutionally later found to have such a mental condition and thereupon criminally recommitted, because under CPL 330.20 “the criminal court retains supervisory authority over insanity acquitees” (at 562).[3]
Therefore, the application to have CPL 330.20 (14) declared unconstitutional was denied.
*441 (2) Instructions on Mental Illness
The parties disagreed on the instruction to the jury regarding mental illness and the need for retention. The petitioner argued that both determinations were to be made by the jury, while the respondent argued that the jury need only determine the issue of mental illness. The respondent points out quite logically that the terms “dangerous mental disorder” and “mentally ill” are defined in the Criminal Procedure Law, but the term “mental illness” is defined in the Mental Hygiene Law.
CPL 330.20 (1) (c) provides, “ ‘Dangerous mental disorder’ means: (i) that a defendant currently suffers from a ‘mental illness’ as that term is defined in subdivision twenty of section 1.03 of the mental hygiene law, and (ii) that because of such condition he currently constitutes a physical danger to himself or others.”[4]
CPL 330.20 (1) (d) provides “ ‘Mentally ill’ means that a defendant currently suffers from a mental illness for which care and treatment as a patient, in the in-patient services of a psychiatric center * * * is essential to such defendant’s welfare and that his judgment is so impaired that he is unable to understand the need for such care and treatment”; Mental Hygiene Law § 1.03 (20) provides “ ‘Mental illness’ means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment and rehabilitation.”
The respondent based its contention upon the difference in the definitions of the two terms between the two different sections in the New York statutes. It sought to infer that because this proceeding was brought under CPL 330.20 (16), subdivision (1) (d) of that section was applicable, and that a finding of mental illness by the very wording of that section automatically translates into the need for retention. This theory is contradicted by the terminology of section 9.35 of the Mental Hygiene Law incorporated by reference in CPL 330.20 (16) (see Daniel R. v Wack, 167 Misc 2d 74, 77-78).
Section 9.35 insofar as it is applicable provides “If the verdict of the jury * * * be that such person is not mentally ill or is not in need of retention the justice shall forthwith discharge him, but if the verdict of the jury * * * be that such person is *442 mentally ill and in need of retention the justice shall * * * make an order authorizing continued retention * * * ” (emphasis added).
The decisions in this area seem to indicate that section 1.03 (20) should prevail. The cases of Matter of Francis S. (supra at 561 n 1)[5] and Matter of Mental Hygiene Legal Servs. ex rel. Cruz v Wack (75 NY2d 751, 753)[6] refer to section 1.03 (20) only. The cases of Matter of Watkins R. v Berry (276 AD2d 492), and Matter of Launcelot T. v Mullen (264 AD2d 697), both hold that a defendant found not responsible for a crime by reason of mental disease or defect is entitled to a jury trial on the issue of whether he is still mentally ill and still in need of continued retention.
Therefore, the jury was properly instructed that it had to make two findings, i.e., mental illness and the need for retention.
(3) Instructions on Sequence of Findings
The parties also disagreed on the instructions to the jury regarding the sequence of its findings on the various grades of the petitioner’s mental condition. The petitioner requested an instruction that the jury first consider mental illness and proceed as necessary to the need of retention and dangerous mental disorder, while the respondent requested that the jury be instructed that it first consider dangerous mental disorder and proceed as necessary to mental illness and the need for retention.
Two psychiatrists on each side testified that the petitioner had a mental illness, so the primary issue was dangerous mental disorder. Accordingly, the court adopted the sequence advanced by the respondent, upon the assumption that the jury would follow the court’s instructions (People v Davis, 58 NY2d 1102, 1104; People v Delpilar, 293 AD2d 365, 366) and reach the same conclusion regardless of the sequence. However, it is now the court’s opinion that the sequence advocated by the petitioner is the more logical, the more intelligible to the jury and fairer to the petitioner. The jury should have had the *443 opportunity to determine the issue of mental illness[7] and the need for retention before it determined the issue of dangerous mental disorder (see Matter of Michael RR., 284 AD2d 786, 791 [jury rejected the opinions of experts on both sides that an insanity acquitee who had a mental illness required continued inpatient care]).
The jury should first determine whether the petitioner has a mental illness (Mental Hygiene Law § 9.35; see Mental Hygiene Legal Servs. ex rel. Cruz v Wack, 75 NY2d 751 [Supreme Court found the insanity acquitee was no longer mentally ill]); if the jury determines that the petitioner suffers from a mental illness, it should then determine if he is in need of retention (Mental Hygiene Law § 9.35; see Mental Hygiene Legal Servs. ex rel. Cruz v Wack, supra [Appellate Division found the insanity acquitee had mental illness and was in need of retention]), or if he is mentally ill but not in need of retention (Mental Hygiene Law § 9.35; see Matter of Michael RR., supra [jury found insanity acquitee who was still mentally ill did not require further retention]).
If the petitioner is determined to be both mentally ill and in need of retention, the jury should finally determine if the petitioner suffers from a dangerous mental disorder (CPL 330.20 [14]; see Matter of George L., 85 NY2d 295, 301 [insanity acquitee conceded he was mentally ill, but the trial court found that he suffered from a dangerous mental disorder as defined in CPL 330.20 (1) (c)]).
However, the law is clear that the court and not the jury determines if the petitioner suffers from a dangerous mental disorder (Watkins R. v Berry, 276 AD2d 492; Barber v Rochester Psychiatric Ctr., 250 AD2d 87), but the court in its discretion may use the jury in an advisory capacity on the issue of dangerousness (Barber v Rochester Psychiatric Ctr., supra at 90). This court did use the jury in such an advisory capacity, but it did not indicate that to the jury, reasoning that it might not be that conscientious if informed it was not the final arbiter (see Daniel R. v Wack, supra at 79 n 3).
Therefore, the jury should have been instructed that the sequence of its findings should be mental illness, need for retention and dangerous mental disorder.
(4) The Instruction on the Effect of the Petitioner’s Plea
The petitioner testified in this case to an exculpatory version of his conduct that resulted in a plea of not responsible by rea *444 son of mental disease or defect, and that he so pleaded because of the advice of his then attorney. Each side required a different instruction to the jury as to the effect of such plea in relation to the conduct precipitating such a plea.
The respondent referred to CPL 220.15 (5) (a) which requires that the court accepting such a plea be satisfied that each element of the underlying offense “would be established beyond a reasonable doubt at a trial” and requested the language from the case of Jones v United States (463 US 354) that “A verdict of not guilty by reason of insanity establishes * * * [that] the defendant committed an act that constitutes a criminal offense” (at 363) “beyond a reasonable doubt” (at 364). Instead, this court in its instruction quoted from People v Lancaster (69 NY2d 20, 29, cert denied 480 US 922), that “the defense of mental disease or defect presupposes a finding of factual guilt * * * ” concluding that an evidentiary question should be determined by state decisions and not federal decisions (see People v Wesley, 83 NY2d 417, 423 n 2; People v Kennedy, 68 NY2d 569, 577-578).
However, research conducted after the verdict disclosed that the Court of Appeals in Matter of Francis S. (supra at 564), citing Jones and referring to a defendant’s plea of not responsible by reason of mental disease or defect, concluded that “the acquitee’s mental illness-related conduct consisted of the commission of a crime, established beyond a reasonable doubt.” Thus, the respondent was entitled to an instruction to the jury that the act which resulted in the defendant’s plea established beyond a reasonable doubt that the defendant had committed the crime of attempted assault in the first degree and criminal possession of a weapon in the third degree involving a police officer.
While the respondent was entitled to the required instruction in this regard, apparently this does not preclude the petitioner from testifying that his involvement in the crime resulting in the plea was different from the respondent’s allegations and that despite the plea he did not suffer from a mental illness (Matter of Francis S., 206 AD2d 4, 14, affd 87 NY2d 554; People v Jacobs, 149 AD2d 112, 114, lv denied 74 NY2d 949).
Therefore, the instruction to the jury in this regard was incorrect, but the exculpatory testimony by the petitioner was admissible.

. All of the cases cited in this decision captioned “Francis S.” involved prior proceedings by this petitioner.

. Throughout this decision a defendant found not responsible by reason of mental disease or defect is referred to as an “insanity acquitee.”

. At the time of this decision the petitioner had been under the jurisdiction of criminal court for over seven years.

. Matter of Daniel R. v Wack (167 Misc 2d 74, 77) emphasizes that this section incorporates by reference Mental Hygiene Law § 1.03 (20) and not CPL 330.20 (1) (d).

. It would be an absurd result if the jury were first instructed to make a finding under subdivision (1) (d), and if it so found, that it further had to consider subdivision (20) to determine if the insanity acquitee suffers from a dangerous mental disorder (see n 4).

. In this case the insanity acquitee brought a habeas corpus proceeding under Mental Hygiene Law § 33.15 and was found to have a mental illness and in need of retention; the mode of the proceeding should not alter the effect of that decision.

. This is especially true since pursuant to CPL 330.20 (1) (c) “mental illness” is a component of “dangerous mental disorder.”