■ In the Matter of Brian HH. Saratoga County District Attorney, Respondent; Brian HH., Appellant. [833 NYS2d 718]—

Mercure, J.P. Appeal, by permission, from an order of the County Court of Saratoga County (Scarano, Jr., J.), entered August 31, 2006, which, in a proceeding pursuant to CPL 330.20, found that respondent has a dangerous mental disorder and committed him to the custody of the Commissioner of Mental Health for a period of six months.

Respondent was charged in an indictment with criminal contempt in the first degree after he violated an order of protection in favor of a female acquaintance in December 2005. Respondent had been arrested several times in the past for violating the order of protection. County Court accepted his plea of not responsible by reason of mental disease or defect, and ordered that respondent be examined by two psychiatrists to determine whether he suffered from a dangerous mental disorder (*see* CPL 220.15, 330.20 [2]). A third psychiatric examination was performed by Gowramma Shivashankar, a senior medical officer at the Mid-Hudson Forensic Psychiatric Center, after two attending psychiatrists at the Center, Charulata Shah and Michael Stone, differed in their opinions regarding whether respondent suffers from a dangerous mental disorder (*see* CPL 330.20 [5]). Ultimately, both Shah and Shivashankar concluded that respondent is dangerously mentally ill, while Stone opined that respondent was mentally ill but not dangerous.

At an initial hearing to determine respondent's mental condition, an Assistant District Attorney (hereinafter ADA) and respondent's counsel consented to the admission of the three psychiatric reports. Without calling any witnesses or presenting any additional evidence, the ADA then asserted that the reports of Shah and Shivashankar established that respondent is dangerously mentally ill, and argued that Stone's report should be disregarded because Stone was not as "thorough" in his evaluation of respondent. The ADA did not explain the basis for her assertion that Stone's report was not as thorough as the other two reports or otherwise elaborate on that assertion. Instead, respondent's counsel replied that he was constrained to

agree with the ADA that respondent had a "track one dangerous mental illness" and indicated that respondent consented to confinement in a secure facility without further discussion. When County Court briefly inquired whether counsel was correct, respondent answered affirmatively. County Court then determined that a fair preponderance of the credible evidence established that respondent suffers from a dangerous mental disorder and ordered him to be committed to the custody of the Commissioner of Mental Health for confinement in a secure facility for six months. This Court granted respondent's subsequent motion for leave to appeal, and we now reverse and remit for a de novo hearing under CPL 330.20 (6).

Respondent's sole argument on appeal is that he was denied the effective assistance of counsel during the initial commitment hearing when counsel simply adopted the ADA's position that respondent is dangerously mentally ill. Initially, we note that because respondent was found to have a dangerous mental disorder at the initial commitment hearing, he was designated a "track one" insanity acquittee (*see Matter of Norman D.*, 3 NY2d 150, 153 n 1 [2004]). "Track status designation, unique to insanity acquittees, is vitally important in determining the level of judicial and prosecutorial involvement in future decisions about an acquittee's confinement, transfer and release. . . . [T]rack one status is significantly more restrictive than track two status," the designation given when an acquittee is determined to be mentally ill but not dangerous (*id.* at 154-155; *see Matter of David B.*, 97 NY2d 267, 276 n 4 [2002]; *Matter of George L.*, 85 NY2d 295, 302 n 2 [1995]). Moreover, track status is fixed at the initial hearing and reevaluation of track one status is limited to an appeal (*see Matter of Norman D., supra* at 156-157). Inasmuch as the initial hearing was therefore a critical stage of the proceedings during which respondent was entitled to the effective assistance of counsel, we must consider "whether counsel's performance [therein] 'viewed in totality' amount[ed] to 'meaningful representation' " (*People v Turner*, 5 NY3d 476, 480 [2005], quoting *People v Baldi*, 54 NY2d 137, 147 [1981]). We agree with respondent that counsel's performance did not meet that standard.

As respondent asserts, his counsel essentially acceded, without further discussion, to the ADA's argument that the evidence supporting a less restrictive, track two status was not as credible as that supporting track one status. Counsel did not call any witnesses—including Stone, who concluded that respondent was mentally ill but not dangerous—on respondent's behalf, waived cross-examination of Shah and Shivashankar by consent-

ing to the admission of their reports finding that respondent had a dangerous mental disorder, and simply consented to a finding of a dangerous mental disorder and confinement in a secure facility. While petitioner asserts that examination of the expert witnesses or use of Stone's report to make an argument on respondent's behalf would have been futile and counsel was not required to make an argument that had no chance of success (*see generally People v Stultz*, 2 NY3d 277, 287 [2004]), we note that each examiner was a qualified psychiatric expert and the experts' reports were all approximately the same length, contained the same basic categories and considerations, and were contemporaneously prepared. Under these circumstances, respondent has " 'demonstrate[d] the absence of strategic or other legitimate explanations' for counsel's . ... conduct" and that he was denied "meaningful representation" at the initial hearing (*People v Caban*, 5 NY3d 143, 152 [2005], quoting *People v Rivera*, 71 NY2d 705, 709 [1988]; *cf. Matter of Sidney JJ.*, 30 AD3d 959, 961 [2006]; *Matter of Arto ZZ.*, 24 AD3d 947, 948 [2005], *lv denied* 6 NY3d 707 [2006]; *Matter of Bates v Bates*, 290 AD2d 732, 734 [2002]). Accordingly, reversal and remittal for a new hearing is required here.

We have considered the parties' remaining arguments and, to the extent that they are not rendered academic by our determination, conclude that they are lacking in merit.

Peters, Mugglin and Kane, JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the County Court of Saratoga County for further proceedings not inconsistent with this Court's decision.