Matter of Ebral QQ. (2024 NY Slip Op 05514)

Matter of Ebral QQ.

2024 NY Slip Op 05514

Decided on November 7, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 7, 2024

CR-24-0186
[*1]In the Matter of Ebral QQ. Greene County District Attorney, Respondent; Ebral QQ., Appellant.

Calendar Date:September 5, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Michael D. Neville, Mental Hygiene Legal Service, Garden City (Dennis B. Feld and Felicia B. Rosen of counsel), for appellant.
Joseph Stanzione, District Attorney, Catskill (Krista Kline of counsel), for respondent.

Mackey, J.
Appeal, by permission, from an order of the County Court of Greene County (Terry J. Wilhelm, J.), entered May 30, 2023, which, in a proceeding pursuant to CPL 330.20, found that respondent has a dangerous mental disorder and committed him to the custody of the Commissioner of Mental Health.
In August 2020, respondent was indicted for attempted murder in the second degree, assault in the second degree, criminal possession of a weapon in the third degree and resisting arrest after stabbing the victim at random. He subsequently entered a plea of not responsible by reason of mental disease or defect (see CPL 220.15 [5]). County Court thereafter ordered that he undergo a psychiatric examination by two qualified psychiatric examiners to determine if he had a dangerous mental disorder or whether he was mentally ill (see CPL 330.20 [1] [e]; [2]). In their respective reports, both psychiatric examiners concluded that respondent was dangerously mentally ill and required confinement in a secure facility. Following an initial hearing held pursuant to CPL 330.20 (6), County Court determined that respondent suffered from a dangerous mental disorder and designated him a "track one" insanity acquittee.[FN1] He was, therefore, committed to the custody of the Commissioner of Mental Health for an initial period of six months. By permission, respondent appeals.
Respondent's sole argument on appeal is that he was denied meaningful representation during the initial commitment hearing due to counsel's failure to call a psychiatric expert to contest the findings of the court-ordered psychiatric examiners. The initial hearing under CPL 330.20 (6) is "a critical stage" of the proceedings at which the respondent is entitled to the effective assistance of counsel, requiring us to consider whether counsel's performance therein viewed in totality amounted to meaningful representation (Matter of Brian HH., 39 AD3d 1007, 1009 [3d Dept 2007]; see People v Juan R., 180 AD3d 935, 936 [2d Dept 2020]; Matter of Matheson KK., 161 AD3d 1260, 1262 [3d Dept 2018] lv dismissed 32 NY3d 945 [2018]). "[E]ven if such representation was not error free, less than perfect representation does not equate to ineffective assistance" (People v Drumgold, 206 AD3d 1044, 1049 [3d Dept 2022], lv denied 38 NY3d 1150 [2022]).
"Generally, whether to call an expert is a tactical decision and, in many instances, cross-examination of the People's expert will be sufficient to expose defects in an expert's presentation" (Matter of State of New York v Kenneth II., 190 AD3d 33, 43 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]). "As long as the defense reflects a reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance" (People v Benevento, 91 NY2d 708, 712-713 [1998] [citation omitted]).
Here, we find that counsel provided meaningful representation, notwithstanding his decision not to [*2]call an expert witness. Counsel extensively cross-examined the two psychiatric examiners, who both diagnosed respondent with schizophrenia and substance abuse disorders with no insight into his illness. Counsel successfully elicited testimony from those experts that not everyone diagnosed with either schizophrenia or schizoaffective disorder would be considered "dangerous," that many of the symptoms of schizophrenia could indeed be alleviated with proper medication, and that respondent might not have been properly treated/medicated while in the State's custody. Counsel's decision not to call his own expert witnesses but, rather, defend the case through impeachment of the People's witnesses was certainly a reasonable and legitimate strategy. Finally, counsel made a cogent and persuasive summation consistent with that strategy. Under the circumstances of this case, respondent was certainly afforded effective representation (see Harrington v Richter, 562 US 86, 111 [2011]; People v Aiken, 45 NY2d 394, 400 [1978]).
For these reasons, we affirm.
Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: CPL 330.20 establishes a three-tiered system, the levels of which are known as "tracks," though that language does not appear in the statute itself. "Track-one acquittees are those found by the trial judge to suffer from a dangerous mental disorder; i.e., a mental illness that makes them a physical danger to themselves or others. Track-two acquittees are mentally ill, but not dangerous, while track-three acquittees are neither dangerous nor mentally ill" (Matter of Matheson KK., 161 AD3d 1260, 1261-1262 [3d Dept 2018] [internal quotation marks, brackets and citations omitted], lv dismissed 32 NY3d 945 [2018]).