OPINION OF THE COURT
Martin B. Stecher, J.
The principal issue presented in each of these proceedings is whether the evidence which the court and a jury may consider, on a "rehearing and review” (CPL 330.20 [16]; Mental Hygiene Law §§ 9.35, 15.35) of an order committing or retaining an unwilling patient to or in a State mental hospital, is limited to the evidence heard by the Justice who rendered the disputed order of commitment or retention. The Attorney-General contends, in support of his in limine motions, that on "rehearing and review,” any new evidence is barred; the petitioners contend that all relevant, contemporary evidence should be received.
CPL 330.20 (16) provides that "[a]ny defendant who is in custody of the commissioner pursuant to a commitment order, a retention order, or a recommitment order, if dissatisfied with such order, may, within thirty days after the making of such order, obtain a rehearing and review of the proceedings and of such order in accordance with the provisions of section 9.35 or 15.35 of the mental hygiene law.”
Section 9.35 of the Mental Hygiene Law ("Review of court authorization to retain an involuntary patient”) provides that any person who has been denied release or whose retention has been authorized, who is "dissatisfied with * * * such order” may "obtain a rehearing and review of the proceedings already had and of such order”. The Justice to whom the application is made "shall cause a jury to be summoned and shall try the question of the mental illness and the need for *602 retention of the patient so authorized to be retained.” (Mental Hygiene Law § 9.35.) A jury trial may be waived. (Section 15.35 of the Mental Hygiene Law dealing with schooling of the mentally retarded is substantially the same as Mental Hygiene Law § 9.35.)
The Attorney-General acknowledges that the statutory mandate to "try the question of the mental illness and the need for retention of the patient to be retained” gives rise to the inference that the trier of fact is to consider the petitioner’s current mental condition and need for retention. Nevertheless, he urges, the statute is inconclusive because the phrase "rehearing and review of the proceeding already had” suggests that only evidence relevant to petitioner’s condition and needs as of the initial hearing be considered. (Mental Hygiene Law § 9.35.)
The Attorney-General’s reliance on a dictum in Matter of David C. (117 AD2d 802, 803) that "[t]he Legislature * * * must have intended by use of the word 'rehearing’ that there first be a hearing, the proceedings of which would then become subject to review”, is misplaced. The quotation, in context, is not relevant to our issue.
The statute’s (Mental Hygiene Law § 9.35) genesis is to be found in the Laws of 1874 (ch 446, § 11), which provided that "[i]f any lunatic * * * be dissatisfied with any final decision or order * * * he may, within three days * * * appeal therefrom to a justice of the Supreme Court, who shall, thereupon * * * forthwith call a jury to decide the fact of lunacy.” The 1896 version of the statute (L 1896, ch 545, § 63) provided that "If a person ordered to be committed * * * is dissatisfied * * * he may, within ten days after the making of such order appeal therefrom to a justice of the supreme court other than the justice making the order, who shall cause a jury to be summoned as in case of proceedings for the appointment of a committee for an insane person, and shall try the question of such insanity in the same manner as in proceedings for the appointment of a committee.” Section 2335 of the Code of Civil Procedure, in effect in 1896, provided that the trial "must be confined to the question, whether he is so incompetent, at the time of the inquiry ” (emphasis supplied).
In 1909, the word "appeal” was abandoned in favor of "rehearing and a review of the proceedings already had” (L 1909, ch 155, § 83) and this formula was retained in the 1927 (L 1927, ch 426, § 7, amending L 1909, ch 32, § 83 and *603 renumbering § 83 as § 73) and the 1944 (L 1944, ch 666, § 33, amending L 1909, ch 32, as amended by L 1927, ch 426, § 7 and L 1933, ch 395, § 14, renumbering § 73 as § 76) enactments which provided that the issue to be tried was not "the insanity of the person so committed” but "the question of the mental illness of the person so certified”. The current statute was adopted in 1972, when the phrase "as in the case of appointment of a committee” was dropped and the trier of fact was mandated to "try the question of the mental illness and the need for retention of the patient so authorized to be retained” (L 1972, ch 251, § 31.35, renumbered section 9.35 by L 1977, ch 978, § 10).
It is apparent that despite stylistic changes over the years, the legislative intent has remained consistent and unchanging: the patient’s condition is to be assessed as of the time of the trial being held. When the Legislature dropped the word "appeal” for "rehearing and review of proceedings already had” (L 1909, ch 155, § 83) it made clear that the jury trial was in no sense to be an appeal from the prior nonjury hearing limited to a record made at the earlier hearing; but a "review” of the patient’s status and the need for retention as at the time of the jury hearing (see, Matter of Rose, 109 Misc 2d 960). An appellate type "review” by jury would clearly violate the State Constitution (art VI, § 4).
The language of the statute (Mental Hygiene Law § 9.35) and its choice of the present tense ("[i]f the verdict of the jury * * * be that such person is not mentally ill;” and, "if the verdict of the jury * * * be that such person is mentally ill” [emphasis supplied]) also make clear that the jury verdict is to determine what the patient’s condition is at the time of rehearing, not what it was on some earlier day. Indeed, a contrary interpretation might well be constitutionally infirm for no patient may be kept confined unless mandated by his time-of-trial condition. To confine him because of his condition at a previous hearing would deny him due process of law (see, Baxstrom v Herold, 383 US 107).
To follow the Attorney-General’s line of reasoning is to lead to an impossible result. Any trier of fact in a retention hearing bases his or its decision, not exclusively on expert testimony which can be controlled and limited, but on the testimony and conduct of the patient as well. How the patient conducts himself, what he has to say, how he responds to the attorneys’ questions may profoundly affect the outcome of the hearing. The jury hears the patient as he is and nothing can *604 change that — unless, of course, the Attorney-General would preclude the patient’s testimony. He does not and — obviously —cannot for such would be constitutionally barred (US Const 14th Amend).
The parties also raise the issue of who shall determine whether or not the patient has a "dangerous mental disorder” (CPL 330.20 [1] [c]; [6], [7], [8], [9]), the finding upon which will be based the determination to retain the patient, if mentally ill, in a secure or a nonsecure facility (see, CPL 330.20 [11]). In my view that determination is for the court alone and not a jury.
Conceptually, the right to "rehearing and review” by a jury (CPL 330.20 [16]) is an extension of the bedrock on which our liberties depend, that no person should be confined except on the determination of a jury of his peers. But the patient’s liberty interest is the only interest for which a jury is mandated by the statute.
CPL 330.20 is part of a sweeping review and reform of laws (L 1980, ch 548; see, People v Behr, 116 Misc 2d 576) affecting a person acquitted of crime because he or she was "not responsible by reason of mental disease or defect” (CPL 220.15). It was undertaken by the Law Revision Commission at the behest of Governor Carey after the prior statutes’ failure to comply with constitutional principles had long been recognized (see, People v Behr, supra, at 578). Its numerous, interrelated subdivisions are all a single enactment carefully undertaken. The statute (CPL 330.20) deals severally with whether the patient "is mentally ill” and whether the patient "has a dangerous mental disorder” (subds [7], [8], [9]). The patient may be deprived of his liberty if he is mentally ill and requires hospitalization, whether dangerous or not. It is for this reason that the "rehearing and review” (subd [16]) — the right to a trial by jury — is expressly provided in cases of "a commitment order, a retention order, or a recommitment order,” all dealing with whether or not the patient is mentally ill requiring hospitalization. No such right is given by the statute with respect to the dangerousness; for dangerousness is only an issue once deprivation of liberty — hospitalization— is authorized.
This is no different than it should be. A principal, although not the only, reason for detention of a person who is dangerously mentally ill in a secure facility is the protection of the public. This is uniquely a matter of judicial judgment *605 and not a jury question. Once the initial question of deprivation of liberty — forced hospitalization — has been determined by the jury adversely to the patient’s wishes, dangerousness and the type of confinement is for the court.
Mental Health Legal Service makes much of the fact that numerous Justices, of which I am one, have made determinations of both mental illness and dangerousness or its absence in a single hearing and a single decision. This does not make the jury the appropriate forum for the decision on dangerousness. Nor does this decision mandate separate hearings on the two issues. The allocation of some issues to a jury and some to a Judge, in a single trial, is well recognized in our law (see, Siegel, NY Prac §§ 378, 381 [2d ed]; CPLR 4102 [c]); and, of course, the Justice presiding may, in his discretion, utilize the jury trying the mental illness issue as an advisory jury on the issue of dangerousness (CPLR 4212; Siegel, op. cit., § 381; 4 W einstein-Korn-Miller, NY Civ Prac If If 4212.02, 4212.03). But there is no jury trial available as a matter of right on the dangerousness issue.
Accordingly, it is determined that each of the "rehearings and reviews” to which any of the named patients is entitled shall proceed as a trial de nova; that the motion to limit the evidence to that produced at the prior bench trial is denied; and that there is no right to trial by jury on the issue of dangerousness.