[818 NE2d 642, 785 NYS2d 1]

In the Matter of NORMAN D., Appellant. COMMISSIONER OF THE
NEW YORK STATE OFFICE OF MENTAL HEALTH, Respondent.

Argued September 8, 2004; decided October 19, 2004

## POINTS OF COUNSEL

*Mental Hygiene Legal Service,* Mineola (*Lisa Volpe, Sidney Hirschfeld* and *Dennis B. Feld* of counsel), for appellant. I. Track placement at the initial commitment hearing has a significant effect on an acquittee's confinement. (*People v Stone,* 73 NY2d 296; *Matter of David B.,* 97 NY2d 267; *Matter of Jill ZZ.,* 83 NY2d 133; *People v Escobar,* 61 NY2d 431; *Matter of Stone,* 294 AD2d 59; *Matter of Oswald N.,* 87 NY2d 98; *Matter of George L.,* 85 NY2d 295; *Matter of Francis S.,* 87 NY2d 554.) II. Track status is necessarily challenged in the context of a rehearing and review of an initial commitment order. (*People ex rel. Barnes v Gardner,* 24 NY 583; *Burger v Burger,* 111 NY 523; *Matter of Coates,* 9 NY2d 242; *Matter of George L.,* 85 NY2d 295. III. The Appellate Division's justifications for excluding the designation of track status from a rehearing and review of an initial commitment order are flawed. (*Broida v Bancroft,* 103 AD2d 88; *Block v Nelson,* 71 AD2d 509; *People ex rel. Barnes v Gardner,* 24 NY 583; *Matter of Daniel R. v Wack,* 167 Misc 2d 74; *Matter of Robert C. v Wack,* 167 Misc 2d 677; *Matter of Maureen A. v Wack,* 153 Misc 2d 600; *Matter of Barber v Rochester Psychiatric Ctr.,* 250 AD2d 87; *People v Stone,* 73 NY2d 296; *Cohen v Anne C.,* 301 AD2d 446; *Matter of Watkins R. v Berry,* 276 AD2d 492.)

*Eliot Spitzer, Attorney General,* Albany (*Peter H. Schiff, Caitlin J. Halligan, Daniel Smirlock* and *Julie S. Mereson* of counsel), for respondent. I. Defendant's track one status, established when the initial commitment order found that he suffered from a dangerous mental disorder, is not affected by the finding at the time of the rehearing and review proceeding that he is mentally ill but no longer suffers from a dangerous mental disorder. (*Matter of Jill ZZ.,* 83 NY2d 133; *Matter of Stone,* 294 AD2d 59; *People v Hudson,* 217 AD2d 53; *Matter of George L.,* 85 NY2d 295; *Matter of Alphonse P. v Palmer,* 262 AD2d 490; *Matter of Barber v Rochester Psychiatric Ctr.,* 250

AD2d 87; *Matter of Launcelot T. v Mullen,* 264 AD2d 697; *Matter of Maureen A. v Wack,* 153 Misc 2d 600; *Matter of Arnold A. v Sanchez,* 166 Misc 2d 493; *Matter of Torsney,* 47 NY2d 667.) II. A challenge to track status must be asserted in an appeal under CPL 330.20 (21), not on rehearing and review.

*Donald A. Williams, District Attorney,* Kingston (*Paul Tsui* of counsel), amicus curiae. I. Appellant's petition for a rehearing and review of the first retention order was moot as a matter of law. (*Aetna Life Ins. Co. v Haworth,* 300 US 227; *Matter of Hearst Corp. v Clyne,* 50 NY2d 707; *Matter of Sherry Lehmann, Inc. v New York State Liq. Auth.,* 160 AD2d 538; *Matter of Crumpley v Wack,* 212 AD2d 299, 86 NY2d 808; *Matter of David B.,* 97 NY2d 267; *Matter of Jill ZZ.,* 83 NY2d 133.) II. The rehearing and review was not the proper vehicle to challenge the initial track status denomination. Rather, an appeal to an intermediate appellate court should have been taken, and the Appellate Division's application of earlier case law was proper. (*Matter of Barber v Rochester Psychiatric Ctr.,* 250 AD2d 87; *Matter of Robert C. v Wack,* 167 Misc 2d 677; *Matter of Daniel R. v Wack,* 167 Misc 2d 74; *Matter of Maureen A. v Wack,* 153 Misc 2d 600; *Matter of Rose,* 109 Misc 2d 960; *People v Stone,* 138 AD2d 4.) III. As a matter of public policy, appellant should remain subject to the provisions of CPL 330.20 as a safeguard allowing the District Attorney to participate in monitoring appellant's status. (*People v Stone,* 73 NY2d 296; *Matter of George L.,* 85 NY2d 295; *Matter of Oswald N.,* 87 NY2d 98; *People v Helfman,* 91 AD2d 1034.)

### OPINION OF THE COURT

Chief Judge KAYE.

Can an insanity acquittee's track status—as established by an initial commitment order finding that he suffers from a "dangerous mental disorder"—be changed when, pursuant to a rehearing and review under CPL 330.20 (16), he is later determined to be "mentally ill" but no longer suffering from the dangerous mental disorder? We answer that question in the negative, as did the Appellate Division. Track status, as determined by the initial commitment order, governs the acquittee's level of supervision in future proceedings and may be overturned only on appeal from that order, not by means of a rehearing and review.

### Facts

On April 19, 1997, appellant (Norman D.) set fire to the trailer home he shared with his wife, their children and other family

members. On February 24, 1998, the case concluded by his entering a plea of not responsible by reason of mental disease or defect. Four months later, following an initial hearing conducted pursuant to CPL 330.20 (6), County Court determined that appellant suffered from a dangerous mental disorder and designated him a "track one" insanity acquittee.[1] Subsequently, appellant was remanded to Mid-Hudson Forensic Psychiatric Center, a secure facility, for an initial period of six months.

In a petition dated July 9, 1998, appellant sought a rehearing and review of his commitment order, as provided for by CPL 330.20 (16). Because of various delays, the court did not consider the merits of appellant's application until nearly three years later, in April 2001. By that time he was, as all parties agreed, no longer suffering from a dangerous mental disorder. The court accepted the parties' stipulation to his designation as mentally ill and his placement in a nonsecure psychiatric treatment facility. Appellant, however, argued that as someone now mentally ill but not suffering from a dangerous mental disorder, the court should reassess his track status. Because he suffered from a mental illness (and not a dangerous mental disorder) at the time of the rehearing and review, he urged that he should be reclassified as a track two acquittee, and thus the conditions of his treatment and oversight should be governed by the Mental Hygiene Law, not the Criminal Procedure Law. The Commissioner of Mental Health countered that a change in track status could result only from appeal of the original commitment hearing order, not from a rehearing and review.

Supreme Court undertook what was essentially appellate review of the original 1998 commitment hearing decision, though in the context of its de novo rehearing and review power. The court found that the 1998 decision was supported by credible evidence and, consequently, the original track one designation would continue to govern the conditions of appellant's oversight, even if he no longer suffered from a dangerous mental disorder. The Appellate Division affirmed that part of the

---

1. CPL 330.20 establishes a three-tiered system, the levels of which have come to be known by courts and commentators as "tracks," though that language does not appear in the statute itself. "The applicable tracks are premised upon findings either (i) that the defendant has a 'dangerous mental disorder' [track one]; or (ii) that the defendant does not have a dangerous mental disorder but is 'mentally ill' [track two]; or (iii) that the defendant does not have a dangerous mental disorder and is not mentally ill [track three]" (*People v Stone*, 73 NY2d 296, 300 [1989] [citations and internal quotation marks omitted]).

Supreme Court order holding that appellant would remain subject to the provisions of CPL 330.20 as a track one acquittee, noting that the rehearing and review proceeding was not the appropriate vehicle for review of track status (309 AD2d 143 [2d Dept 2003]). We agree.

## Analysis

When a court accepts a plea of not responsible by reason of mental disease or defect it must conduct an initial hearing within 10 days following psychiatric examinations (ordinarily conducted within 30 days of the plea or verdict) (CPL 330.20 [2], [4], [6]). Based on its findings, the court then assigns the acquittee to one of the three tracks. The track designation places more dangerous acquittees under the purview of the Criminal Procedure Law, while less dangerous, though still mentally ill, acquittees are committed to the custody of the Commissioner of Mental Health and come under the supervision of the Mental Hygiene Law (CPL 330.20 [6], [7]).

These track designations arose out of the Insanity Defense Reform Act of 1980 (1981 Report of NY Law Rev Commn, Appendix A [1981 NY Legis Doc No. 65], *The Defense of Insanity in New York State*, reprinted in 1981 McKinney's Session Laws of NY, at 2251-2274). The Act was structured to strike a balance between public safety and the individual rights of the acquittee, and was intended to increase the court's involvement in postverdict supervision of insanity acquittees (*see Matter of Jill ZZ.*, 83 NY2d 133 [1994]; Governor Carey's Mem approving L 1980, ch 548, 1980 McKinney's Session Laws of NY, at 1879-1880). The statute set forth a detailed scheme that was, when appropriate, to mirror the Mental Hygiene Law, but that created new procedures for aspects of postverdict supervision applicable only to acquittees (*see* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 330.20).

Postverdict supervision of insanity acquittees is the very problem presented to us by this case.

Track status designation, unique to insanity acquittees, is vitally important in determining the level of judicial and prosecutorial involvement in future decisions about an acquittee's confinement, transfer and release. With a track one designation an acquittee is subject to ongoing supervisory terms of court-issued commitment orders and subsequent retention orders; he or she must be confined to a secure psychiatric facility for an initial period of six months; a court order is required for any

transfer to a nonsecure facility, off-ground furlough, release or discharge; and the district attorney's office continues to be notified of, with the option of participating in, further court proceedings involving the acquittee (CPL 330.20 [6], [8]-[13]). However, if an acquittee is designated track two, then it is the Commissioner of Mental Health, in accordance with the Mental Hygiene Law, who controls subsequent orders of commitment and other oversight (CPL 330.20 [7]). In short, track one status is significantly more restrictive than track two status.

An acquittee can challenge those trial court orders affecting his or her personal liberty in one of two ways. An acquittee "dissatisfied" with a commitment order (or later retention or recommitment orders) can, as of right, demand a rehearing and review held before a different judge or a jury within 30 days after the order (CPL 330.20 [16]). Alternatively, an acquittee can seek leave to appeal the order to an intermediate appellate court pursuant to CPL 330.20 (21) (a) (ii). The appellate court must modify the order of the trial court if it determines that the record did not support the lower court's findings.

These two options, available in the alternative, are not coextensive. Rehearing and review is to be conducted in accordance with the provisions of sections 9.35 (mentally ill patients) and 15.35 (mentally retarded residents) of the Mental Hygiene Law (CPL 330.20 [16]). Those sections state that the court conducting the rehearing and review "shall cause a jury to be summoned and shall try the question of the mental [illness or retardation] and the need for retention of the [patient or resident] so authorized to be retained. Any such [patient or resident] . . . may waive the trial of [the or such] fact by a jury and consent in writing to trial of such fact by the court" (Mental Hygiene Law §§ 9.35, 15.35).

Such a proceeding, by judge or jury, is a review of the earlier record as well as any new evidence presented by the parties concerning the acquittee's mental status at the time of the rehearing and review. As such it is not a rehearing in the conventional sense, but a de novo evidentiary proceeding, with the findings a snapshot of the acquittee's condition at that moment.[2] It is a guarantee that the conditions of supervision

**2.** In 1909 the Legislature amended the analogous section, replacing the term "appeal" with the phrase "rehearing and a review of the proceedings already had" (L 1909, ch 155). In 1972 the Legislature enacted a recodified Mental Hygiene Law, with the "rehearing and review" section now requiring

originally imposed are appropriate at the time of the new proceeding.

A CPL 330.20 (21) (a) (ii) appeal, on the other hand, is a review of the lower court's determination based on the record at the time of the earlier proceeding. While any order affecting an acquittee's terms of confinement and release may be challenged as of right at a rehearing and review or upon grant of an application to appeal, a person who, by plea or verdict, is adjudicated not responsible by reason of mental disease or defect and wishes to challenge his original track status may do so only pursuant to the appeal process outlined in CPL 330.20 (21) (a) (ii). The Appellate Division had it exactly right: an acquittee

> "may seek permission to appeal [his or her track status] to an intermediate court, which has the power to modify the acquittee's track status if the evidence presented at the initial commitment hearing does not support a finding of dangerousness. However, the rehearing and review proceeding, which affords the acquittee a right to a jury trial on the issue of whether he or she currently suffers from a mental illness, is not designed as a substitute for appellate review of the initial commitment order" (309 AD2d at 149-150 [internal citation omitted]).

As we noted above, the statutory scheme fixes track status at the initial commitment hearing—that is the proceeding closest in time to the crime itself. Commission of the crime is a strong indication of how dangerous an acquittee's mental condition may become without proper treatment, or if treatment is unsuccessful. To best protect the public welfare and the acquittee's own safety, it is appropriate to determine the necessary level of supervision by potential dangerousness, as demonstrated by an acquittee's mental condition closest to commission of the criminal act.

Although insanity acquittees who contest the terms of their physical confinement have rehearing and review rights comparable to civilly committed patients, acquittees are not generally entitled to all the same heightened procedural and substantive

---

a jury trial on the issues of mental illness and continued retention (L 1972, ch 251, § 31.35). We agree with those lower courts that have held that the Legislature intended a de novo rehearing and review to assess a patient's present condition (*see e.g. Cohen v Anne C.*, 301 AD2d 446 [1st Dept 2003]; *Matter of Barber v Rochester Psychiatric Ctr.*, 250 AD2d 87 [4th Dept 1998]; *Matter of Maureen A. v Wack*, 153 Misc 2d 600 [Sup Ct, NY County 1991]).

protections that apply to involuntarily committed civil patients (*see* CPL 330.20 [16]; Mental Hygiene Law §§ 9.35, 15.35; Report of NY Law Rev Commn, 1981 McKinney's Session Laws of NY, at 2264; *Matter of George L.*, 85 NY2d 295, 305 n 3 [1995] [involuntary civil commitment requires greater protections than apply to insanity acquittees]). Further, it does not follow that acquittees are entitled to the same form of reconsideration of their track status, a determination that is unique to individuals who have committed criminal acts and inapplicable to involuntary civil patients. Reevaluation of the track determination, set forth as part of the initial commitment order, must be limited to an appeal.

Supreme Court's role in this case was as a rehearing and review tribunal, pursuant to CPL 330.20 (16) and Mental Hygiene Law §§ 9.35 and 15.35. In this capacity, Supreme Court should have conducted a de novo proceeding regarding appellant's mental state as of April 2001, the date of the rehearing and review. It should not have undertaken appellate review of the record developed in 1998, nor was it correct to review appellant's track status, even if that decision was to affirm the original court's finding.

The issue before us is not whether appellant is currently suffering from a dangerous mental disorder. He is not. As stipulated and accepted by the court, appellant currently suffers from a mental illness. His changed mental state, however, does not alter the finding by the original court that, at the time closest to his commission of arson, he was suffering from a dangerous mental disorder, and that for the future track one provided the appropriate level of supervision. That appellant's dangerous mental disorder has retreated to mental illness cannot, on rehearing and review, change his track status.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed, without costs.