Matter of James Q. (2017 NY Slip Op 06222)





Matter of James Q.


2017 NY Slip Op 06222


Decided on August 17, 2017


Appellate Division, Third Department


Clark, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 17, 2017

522887

[*1]In the Matter of JAMES Q. COMMISSIONER OF THE OFFICE FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES, Petitioner; JAMES Q., Appellant, and SUFFOLK COUNTY DISTRICT ATTORNEY, Respondent.

Calendar Date: June 5, 2017

Before: Egan Jr., J.P., Lynch, Devine, Clark and Aarons, JJ.


Sheila E. Shea, Mental Hygiene Legal Service, Albany (Brent R. Stack of counsel), for appellant.
Thomas J. Spota, District Attorney, Riverhead (Guy Arcidiacono of counsel), for respondent.


Clark, J.

Appeal from an order of the Supreme Court (Feldstein, J.), entered February 8, 2016 in Franklin County, which, in a proceeding pursuant to CPL 330.20, denied respondent James Q.'s motion to seal the record of the proceeding.
Respondent James Q. (hereinafter respondent) is confined to a secure facility operated by the Office for People with Developmental Disabilities. Respondent has been confined since his 2010 plea of not responsible by reason of mental disease or defect to the charges of rape in the third degree, criminal possession of a weapon in the third degree, criminal mischief in the third degree, menacing in the second degree, assault in the third degree, criminal mischief in the fourth degree and endangering the welfare of a child. A first retention order was issued in March 2011, followed by a second retention order in March 2012 and two subsequent retention orders in September 2013 and January 2015, all of which found that respondent suffered from a dangerous [*2]mental disorder (see CPL 330.20 [1] [c]; [6], [8], [9]).
In July 2015, petitioner filed an application for a two-year subsequent retention order pursuant to CPL 330.20 (9), asserting that respondent continued to suffer from a dangerous mental disorder. As required, petitioner's application was accompanied by the sworn affidavit and written report of Suzanne Fraser, the psychiatric examiner who evaluated respondent (see CPL 330.20 [20]). Thereafter, petitioner, respondent and respondent Suffolk County District Attorney (hereinafter the DA) stipulated to the entry of a subsequent retention order not to exceed 18 months from the expiration of the prior order, thus disposing of petitioner's application without a hearing. However, while there was a consensus that Fraser's written report should be sealed, the parties disagreed as to the sealing of the July 2015 petition, Fraser's sworn affidavit and the subsequent retention order, thus prompting respondent to move for an "order sealing the record" of his retention proceeding. On January 19, 2016, while respondent's motion was pending, Supreme Court entered the subsequent retention order, which, among other things, ordered that Fraser's report, along with "[s]uch additional portions of the record as [the] [c]ourt may order in response to [respondent's] motion," be sealed. The court subsequently denied respondent's motion, ordering that the petition, Fraser's sworn affidavit and the subsequent retention order, "together with this [d]ecision and [o]rder, be filed by the Clerk of this [c]ourt in unsealed fashion." Respondent appeals.[FN1]
Mental Hygiene Law § 33.13 does not, as respondent contends,[FN2] require that the record of his retention proceeding be sealed. To the extent that this Court's decision in Matter of John Z. (Commissioner of N.Y. State Off. of Mental Health) (128 AD3d 1249 [2015]) can be read to require that the record, which includes the retention petition, Fraser's sworn affidavit and the January 2016 subsequent retention order, be sealed as part of respondent's "clinical record," as that term is defined in Mental Hygiene Law § 33.13 (a), such decision should no longer be followed.
Respondent accepted a plea of not responsible by reason of mental disease or defect and, therefore, "avoid[ed] criminal penalties and . . . [became] subject to the CPL 330.20 scheme" (Matter of Jamie R. v Consilvio, 6 NY3d 138, 142 n 2 [2006]; see CPL 330.20 [2]). As the Court of Appeals has consistently recognized, "[t]his places insanity acquittees in a [*3]significantly different posture than involuntarily committed civil patients" and, thus, justifies "rational differences between procedures for commitment and release applicable to defendants found not responsible and persons involuntarily committed under the Mental Hygiene Law" (Matter of Jamie R. v Consilvio, 6 NY3d at 142 n 2 [internal quotation marks and citation omitted]; see Matter of Oswald N., 87 NY2d 98, 105 [1995]; People ex rel. Thorpe v Von Holden, 63 NY2d 546, 555 [1984]; see also Jones v United States, 463 US 354 [1983]). The distinction between an insanity acquittee, as we have here, and an involuntarily committed civil patient is apparent by the Legislature's enactment of a separate statutory scheme — CPL 330.20 — to address the commitment and retention procedures for persons found not responsible for their crimes by reason of mental disease or defect. The detailed statutory framework of CPL 330.20 [FN3] does not include a provision that requires, or even contemplates, the sealing of these commitment and retention proceedings. Nor does the relevant legislative history indicate that the Legislature intended for these proceedings — which arise only after a criminal defendant affirmatively places his or her mental competency in issue — to be sealed from the public (see L 1980, ch 548). The absence of a court sealing provision in CPL 330.20, or any discussion of sealing in its legislative history, is significant, given the many references to the Mental Hygiene Law in CPL 330.20 and the fact that sealing provisions are included in Mental Hygiene Law articles 9 and 15 (see Mental Hygiene Law §§ 9.31 [f]; 15.31 [f])[FN4]. Thus, it stands to reason that, had the Legislature intended for CPL 330.20 commitment and retention proceedings to be sealed, it would have included such a provision within CPL 330.20.
Although CPL 330.20 affords respondents "the rights granted to patients under the [M]ental [H]ygiene [L]aw" (CPL 330.20 [17]), and Mental Hygiene Law § 33.13 (c) grants patients confidentiality in, among other things, their clinical record, the statutory language of Mental Hygiene Law § 33.13 does not support sealing the record of respondent's retention proceeding. It is a fundamental tenet of statutory interpretation that "'the clearest indicator of legislative intent is the statutory text'" and that, therefore, "'the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'" (People v Golo, 26 NY3d 358, 361 [2015], quoting Majewski v Broadalbin—Perth Cent. School [*4]Dist., 91 NY2d 577, 583 [1998]).
Mental Hygiene Law § 33.13 (c) provides that "information about patients or clients reported to the [Office of Mental Health or the Office for People with Developmental Disabilities], including the identification of patients or clients, clinical records or clinical information tending to identify patients or clients, . . . at office facilities [FN5] shall not be a public record and shall not be released by the offices or [their respective] facilities to any person or agency outside of the offices," subject to certain exceptions (emphasis added). A patient's clinical record "shall contain information on all matters relating to the admission, legal status, care, and treatment of the patient or client and shall include all pertinent documents relating to the patient or client" (Mental Hygiene Law § 33.13 [a]). By its own language, the prohibition contained in Mental Hygiene Law § 33.13 (c) applies solely to the Office of Mental Health, the Office for People with Developmental Disabilities and any facility that provides services to Mental Hygiene Law patients. It is a confidentiality provision, not a sealing provision, and it does not require the county clerk to seal court documents that may ultimately become part of a patient's "clinical record." To hold that court documents must be sealed because they may, at some later date, be included in the clinical record and be afforded confidentiality under Mental Hygiene Law § 33.13 is to engage in circular logic.
Nor can a sealing requirement be reasonably read into Mental Hygiene Law § 33.13 (c). In matters of statutory interpretation, courts must avoid a construction that renders superfluous provisions within the overall statutory scheme (see McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]; Majewski v Broadalbin—Perth Cent. School Dist., 91 NY2d at 588). Were Mental Hygiene Law § 33.13 (c) intended to operate as a court sealing provision, Mental Hygiene Law §§ 9.31 (f) and 15.31 (f) — which require the county clerk to seal court documents in proceedings regarding the involuntary admission of patients by medical certification under Mental Hygiene Law articles 9 and 15 — would be unnecessary and redundant. Mental Hygiene Law § 33.14 would also be rendered superfluous. Under that provision, Mental Hygiene Law patients are provided with a mechanism by which to "commence a special proceeding . . . for an order directing the sealing of . . . records held by the [O]ffice of [M]ental [H]ealth, a facility, or any other individual or public or private entity . . ., which identify the [patient] as a recipient of services for mental illness" (Mental Hygiene Law § 33.14 [a] [1] [emphasis added]).
Moreover, sealing the record of respondent's retention proceeding is contrary to longstanding public policy disfavoring limitations on public access to court proceedings (see Judiciary Law § 4; Matter of Hearst Corp. v Clyne, 50 NY2d 707, 715 [1980]; People v Jones, 47 NY2d 409, 416 [1979], cert denied 444 US 946 [1979]; Anonymous v Anonymous, 27 AD3d 356, 361 [2006]), particularly since respondent avoided criminal responsibility by pleading not responsible by reason of mental disease or defect. The victim of respondent's crimes, as well as the public at large, have a right to know how respondent is being civilly managed pursuant to CPL 330.20. This is not to say that respondent gave up all privacy rights simply because he pleaded not responsible by reason of mental disease or defect. Indeed, the legislative history of CPL 330.20 demonstrates that the statute was intended to "establish[] well balanced pre-trial, trial and post-trial procedures" that "better ensure the protection of the public from future dangerous acts of individuals found not responsible, while safeguarding the rights of such individuals" (Governor's Approval Mem, Bill Jacket, L 1980, ch 548). In furtherance of these [*5]dual goals, an appropriate balance of respondent's privacy rights and the public interest may be struck by an order directing that the retention petition, Fraser's sworn affidavit and the January 2016 subsequent retention order be redacted to exclude any information relative to respondent's particular diagnoses and care and treatment. Accordingly, Supreme Court's order must be modified to the extent of directing that any information included in the court record of respondent's retention proceeding with respect to his diagnoses and care and treatment be redacted and, otherwise, affirmed.
Egan Jr., J.P., and Devine, J., concur.




Lynch, J. (dissenting).


We respectfully dissent. Respondent James Q. (hereinafter respondent) contends that because the subject documents formed a part of his clinical record within the meaning of Mental Hygiene Law § 33.13, Supreme Court erred in denying his motion to seal. We agree. Pursuant to Mental Hygiene Law § 33.13, a clinical record for each patient or client shall be kept containing "information on all matters relating to the admission, legal status, care, and treatment of the patient or client and shall include all pertinent documents relating to the patient or client," and that the commissioners of the Office of People With Developmental Disabilities (hereinafter OPWDD) "shall determine the scope and method of recording information [to be included in the clinical record], including data pertaining to admission[] [and] legal matters affecting the patient or client" (Mental Hygiene Law § 33.13 [a] [emphasis added]). Mental Hygiene Law § 33.13 (c) articulates that, save certain inapplicable exceptions, "information about patients or clients . . ., including the identification of patients or clients, clinical records or clinical information tending to identify patients or clients, . . . shall not be a public record and shall not be released by the [Office of Mental Health or OPWDD] or [their respective] facilities to any person or agency outside of the offices" (emphasis added).
Respondent and respondent Suffolk County District Attorney (hereinafter the DA) each rely upon our decision in Matter of John Z. (Commissioner of N.Y. State Off. of Mental Health) (128 AD3d 1249 [2015]) to support their positions as to whether the subject documents qualify as clinical records. For its part, Supreme Court interpreted our decision in Matter of John Z. as making "a careful distinction" between court documents and documents that "bear directly on admission and treatment matters." In Matter of John Z., we determined that the blanket sealing provisions applicable to the involuntary admission of civil patients under Mental Hygiene Law § 9.31 (f) does not apply to a respondent committed pursuant to CPL 330.20 (id. at 1250). We then proceeded to address the impact of Mental Hygiene Law § 33.13 on the sealing of records pertaining to a CPL 330.20 respondent. In doing so, we articulated that, although "clinical treatment records, related hospital records and unrelated medical records must be sealed, it is unclear if other information intended to be included in [the] clinical record under Mental Hygiene Law § 33.13 (a) would be made public" (id.). We then concluded that a CPL 330.20 respondent "is entitled to the full protection of Mental Hygiene Law § 33.13, and all information contained in his or her clinical record, as defined in Mental Hygiene Law § 33.13 (a), shall not be made public, subject to certain statutory exceptions" (id. at 1250-1251). This construction governs the instant dispute as contemplated by CPL 330.20 (17), which affords respondent "the rights granted to patients under the [M]ental [H]ygiene [L]aw."
Applied here, our inquiry keys into whether the subject documents fall within the scope of respondent's "admission" or "legal status" records and pertain to "legal matters affecting the patient or client" within the meaning of Mental Hygiene Law § 33.13. Given the plain meaning [*6]of this language (see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]), it is difficult to perceive how they do not, for each document directly pertains to respondent's legal status. Moreover, the subject documents are protected from being made public pursuant to Mental Hygiene Law § 33.13 (c), not only due to their classification as clinical records, but also because they all identify respondent by name; the petition and subsequent retention order identify respondent's status as a resident at an OPWDD secure facility, and the petition and Suzanne Fraser's affidavit both disclose clinical information, specifically Fraser's opinion, that respondent suffers from a "dangerous mental disorder" and requires care and treatment at an OPWDD secure facility. The fact that Mental Hygiene Law § 33.13 (a) goes on to articulate that the scope of information contained in the clinical record, as determined by the OPWDD commissioners, includes data pertaining to the "admission" of patients or clients and "legal matters affecting" them bolsters reading the subject documents as part of the clinical record. Accordingly, we conclude that the order should be reversed and the motion to seal granted.
Aarons, J., concurs.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as failed to redact the record of respondent's retention proceeding as set forth herein, and, as so modified, affirmed.



Footnotes

Footnote 1: The DA argues that the order appealed from is "inextricably intertwined" with the January 2016 subsequent retention order because that order cross-references respondent's motion to seal the record and, therefore, respondent has a permissive appeal, rather than an appeal as of right. As such, the DA contends that, given respondent's failure to seek leave to appeal pursuant to CPL 330.20 (21) (a) (ii), this appeal is jurisdictionally defective. However, nothing in the plain language of CPL 330.20 (21) (a) (ii) suggests that orders denying a motion to seal the record of the underlying retention proceeding directly or indirectly come under the purview of the statute. In any event, if permission is required, we exercise our discretion to deem the notice of appeal to be an application for leave to appeal and grant such application (see CPLR 5701 [c]; Mayer v Hoang, 83 AD3d 1516, 1518 [2011]).

Footnote 2: Petitioner has not taken a position on this appeal.

Footnote 3: In 1980, following a study conducted by the Law Revision Commission entitled "The Defense of Insanity in New York State," the prior version of CPL 330.20 was repealed and replaced with the current statute (see Matter of Jamie R. v Consilvio, 6 NY3d at 142 n 1; Governor's Approval Mem, Bill Jacket, L 1980, ch 548).

Footnote 4: Mental Hygiene Law §§ 9.31 (f) and 15.31 (f) require the county clerk to, upon order of the court, seal court documents in proceedings regarding the involuntary admission of patients by medical certification under Mental Hygiene Law articles 9 and 15. In Matter of John Z. (Commissioner of N.Y. State Off. of Mental Health) (128 AD3d at 1250), this Court held that the blanket sealing of the record provided for in Mental Hygiene Law § 9.31 (f) was inapplicable to CPL 330.20 respondents because that section is "specifically applicable to the involuntar[y] admission of civil patients" under Mental Hygiene Law article 9 (see People v Kahan, 115 Misc 2d 725, 736-737 [1982]). By the same logic, Mental Hygiene Law § 15.31 (f) is also inapplicable to CPL 330.20 respondents.

Footnote 5: A "facility" is defined as "any place in which services for the mentally disabled are provided" (Mental Hygiene Law § 1.03 [6]).