# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 3
In the Matter of James Q.

Commissioner of the Office for
People with Developmental
Disabilities,
      Petitioner;
James Q.,
      Appellant,
Suffolk County District Attorney,
      Respondent.

Brent R. Stack, for appellant.
Guy Arcidiacono, for respondent.

DiFIORE, Chief Judge:

Mental Hygiene Law § 33.13 protects the confidentiality of the clinical records of

patients and clients as maintained by facilities licensed or operated by the Office of Mental

Health or the Office for People with Developmental Disabilities. The issue raised in this

- 1 -

appeal is whether that confidentiality provision requires automatic sealing of the entire court record of all proceedings involving insanity acquittees who have dangerous mental disorders within the meaning of section 330.20 of the Criminal Procedure Law. We hold that it does not.

I

In July 2009, defendant – then 27 years old – violently assaulted his 16-year-old girlfriend after she attempted to end their sexually intimate relationship. Defendant placed the victim in a chokehold, threw her to the floor, repeatedly punched her in the face, kicked her in the stomach, and threatened to harm her with a steak knife. Eventually, the victim escaped and called the police. By superior court information, defendant was charged with rape in the third degree, criminal possession of a weapon in the third degree, assault in the third degree, and related offenses. Defendant entered a plea of not responsible by reason of mental disease or defect as charged.

After a mandatory psychiatric examination (CPL 330.20 [2]) and an initial hearing (CPL 330.20 [6]), the court found defendant to have a dangerous mental disorder as defined by CPL 330.20 (1) (c)[1] and issued a six-month commitment order, committing defendant to the custody of the Commissioner of the Office for People with Developmental Disabilities (the Commissioner) for confinement in a secure facility for care and treatment.

---

[1] "'Dangerous mental disorder' means: (i) that a defendant currently suffers from a 'mental illness' as that term is defined in subdivision twenty of section 1.03 of the mental hygiene law, and (ii) that because of such condition [defendant] currently constitutes a physical danger to [defendant] or others" (CPL 330.20 [1] [c]).

Subsequently, in March 2011, upon the application of the Commissioner, the court issued a first retention order (CPL 330.20 [8]), finding that defendant continued to suffer from a dangerous mental disorder. This was followed by a second retention order for continued confinement in March 2012, and subsequent retention orders, each with a duration of 18 months, in September 2013 and January 2015 (CPL 330.20 [9]). None of the foregoing court proceedings were sealed.

In July 2015, the Commissioner again petitioned the court to renew his retention of the custody of defendant. Accompanying the application, as mandated by CPL 330.20 (20), was an affidavit from a psychiatric examiner supportive of the relief requested in the application, opining that defendant had a "'dangerous mental disorder' as that term is defined" by CPL 330.20 (1) (c). The "Affidavit of Psychiatric Examiner" incorporated the examiner's six-page "Report of Examination," attached to the affidavit, setting forth "the defendant's clinical diagnosis, a detailed analysis of his or her mental condition which caused the psychiatric examiner to formulate an opinion, and the opinion of the psychiatric examiner with respect to the defendant" (CPL 330.20 [20]). Upon stipulation of the parties – defendant, the Suffolk County District Attorney, and the Commissioner – that defendant has a dangerous mental disorder, the court issued an 18-month subsequent retention order. The parties all agreed that the psychiatric examiner's annexed report of examination, wherein the actual clinical diagnoses and care and treatment of defendant was set out, should be sealed. However, defendant, seeking additional relief, made a motion to seal the entire court record, and specifically, the Commissioner's petition for a subsequent retention order, the supporting affidavit of the psychiatric examiner, and the court's subsequent

retention order itself. The three documents all track the statutory language, stating that defendant suffers from "a dangerous mental disorder" as that legal term is defined in CPL 330.20 (1) (c), thereby presenting the necessary predicate for an issuance of a retention order (22 NYCRR 110.7). Supreme Court denied defendant's motion, finding that the documents "clearly related to the legal proceedings" rather than defendant's treatment. With two justices dissenting, the Appellate Division modified (154 AD3d 58 [3d Dept 2017]).[2] Defendant appealed as of right (CPLR 5601 [a]) and we now affirm, insofar as appealed from.

II

Enacted as part of the Insanity Defense Reform Act of 1980, "CPL 330.20 governs the procedure to be followed after a criminal court has entered a judgment that defendant is not responsible by reason of mental disease or defect" (Matter of Jamie R. v Consilvio, 6 NY3d 138, 141 [2006]; see People v Stone, 73 NY2d 296, 302-303 [1989]). Recognizing that insanity acquittees "constitute a special class" who are treated differently from other candidates for commitment (Jones v United States, 463 US 354, 370 [1983]; see Matter of Oswald N., 87 NY2d 98, 105 [1995]), the legislature "sought to ensure the protection of

_____

[2] Despite the ruling of the Supreme Court, upon the concession of the parties that the annexed report of examination would be sealed, the Appellate Division modified, "on the law," the lower court order "to the extent of directing that any information included in the court record of [defendant's] retention proceeding with respect to his diagnoses and care and treatment be redacted" (154 AD3d at 64). The People did not take an appeal and so we take no position on the propriety or scope of the redaction ordered by the Appellate Division. Nor is the question of whether redaction is permissible as a matter of the court's discretion properly before us. As explained herein, we decide only that there is no basis to seal the entire record of the retention proceedings as a matter of law.

the public from future dangerous acts of defendants found not responsible while safeguarding the rights of such defendants" (People ex rel. Thorpe v Von Holden, 63 NY2d 546, 553-554 [1984] [internal quotation marks and citations omitted]; see Matter of Norman D., 3 NY3d 150, 154 [2004]).  The statute's detailed scheme, while mirroring the Mental Hygiene Law when appropriate, created new procedures for the supervision of acquittees and was intended to increase the court's involvement in that supervision (see Matter of Norman D., 3 NY3d at 154).

"The postadjudication statutory scheme set forth in CPL 330.20 provides three alternative tracks, with different treatment progressions and procedural consequences, based upon the hearing court's postacquittal determination" of a defendant's mental condition (Stone, 73 NY2d at 300).  CPL 330.20 specifically distinguishes defendants found to have a dangerous mental disorder as that term is defined in CPL 330.20 (1) (c) – classified as track one acquittees – from those who are mentally ill but not dangerous – track two acquittees – and those who are neither dangerous nor mentally ill – track three acquittees (CPL 330.20 [6], [7]).  Proceedings for track one acquittees, like defendant in this case, fall "under the exclusive umbrella of CPL 330.20" (see Consilvio, 6 NY3d at 143).  In contrast, upon the court's determination that a defendant is a track two acquittee, who may be subject to involuntary civil commitment, the statute plainly states that the provisions of articles 9 or 15 of the Mental Hygiene Law apply at that stage of the proceeding and all subsequent proceedings (CPL 330.20 [7]).  Significantly, articles 9 and 15 both contain express statutory directives that the papers in proceedings under those articles filed with the county clerk shall be sealed (Mental Hygiene Law §§ 9.31 [f],

15.31 [f]).[3]  Track three acquittees, neither dangerous nor mentally ill, must be released

(Matter of Jill ZZ., 83 NY2d 133, 137 [1994]).

CPL 330.20 provides that "a defendant committed to the custody of the

commissioner pursuant to this section shall have the rights granted to patients under the

mental hygiene law" (CPL 330.20 [17]).  One such right, as set forth in Mental Hygiene

Law § 33.13, is a right to the confidentiality of a patient's "clinical record."  The statute

defines a "clinical record" as one that shall be maintained by facilities for each patient and

that "shall contain information on all matters relating to the admission, legal status, care,

and treatment of the patient" (Mental Hygiene Law § 33.13 [a]).  Subject to a long list of

enumerated exceptions, the release of certain patient information "reported to the [mental

health] offices . . . shall not be a public record" (Mental Hygiene Law § 33.13 [c]).  On this

appeal, defendant primarily argues that because CPL 330.20 references the application of

rights under the Mental Hygiene Law, and because Mental Hygiene Law § 33.13 protects

the confidentiality of clinical records containing information on patients' "legal status,"

any records of CPL 330.20 court proceedings involving such documents must be sealed in

their entirety.  We reject that argument.

---

[3] There are statutory exceptions to the sealing requirement for records and proceedings under the umbrella of the Mental Hygiene Law relating to the mentally ill. For example, the Mental Hygiene Law creates carveouts requiring facilities to transmit information in the clinical record to the New York State Division of Criminal Justice Services and to the criminal justice information services division of the FBI, particularly when the subject of the records attempts to purchase or take possession of firearms (Mental Hygiene Law § 33.13 [c] [13], [14], [15]).

III

To begin, "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same" (Judiciary Law § 4). Underpinning this statute's mandate is our state's long-standing, sound public policy "that all judicial proceedings, both civil and criminal, are presumptively open to the public" (see Matter of Hearst Corp. v Clyne, 50 NY2d 707, 715 [1980]; see also Shiles v News Syndicate Co., 27 NY2d 9, 14 [1970]). Of course, that policy, shared by the nation as a whole and which can have constitutional dimensions (see Matter of Capital Newspapers Div. of Hearst Corp. v Moynihan, 71 NY2d 263, 272 [1988]), extends not only to the criminal and civil proceedings, but also to the records of such proceedings (see NYCLU v New York City Transit Authority, 684 F3d 286, 298 [2d Cir 2012]).

Against that backdrop, the legislature employed no language in Mental Hygiene Law § 33.13 requiring the sealing of any court proceedings but, rather, created a confidentiality provision as to the public disclosure of clinical records of patients or clients of a state agency by the agency itself absent court order. As the legislative history makes clear, the provision was intended "[t]o protect the confidentiality of records at all facilities where services to the mentally ill [] are provided . . . and to place in one section of law definitive provisions governing the necessary release of patient records" (see Mem in Support, Bill Jacket, L 1984, ch 912 at 7). "We have firmly held that the failure of the Legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended" (People v Finnegan, 85 NY2d 53, 58 [1995]; see Pajak v Pajak, 56 NY2d 394, 397 [1982]; McKinney's Cons Laws of NY, Book 1,

Statutes § 74). Nor is there any indication in Mental Hygiene Law § 33.13 that the legislature intended to implicitly provide for an automatic sealing of presumptively public court proceedings and records. In contrast, both Sections 9.31 and 15.31, specifically made applicable by CPL 330.20 to the proceedings to be followed upon a determination that a defendant is a track two acquittee, mandate that "[t]he papers in any proceeding under this article which are filed with the county clerk shall be sealed" (Mental Hygiene Law §§ 9.31 [f]; 15.31 [f]). These latter provisions demonstrate that where the legislature intends to impose a sealing requirement, it does so expressly. If the legislature had intended a blanket sealing provision to apply to insanity acquittees, "it easily could have and surely would have written the statute to say so" (Matter of Theroux v Reilly, 1 NY3d 232, 240 [2003]).

The plain text of Mental Hygiene Law § 33.13 also cuts against defendant's interpretation that the term "clinical record" includes the entire record of court proceedings or dictates to a court how to manage its own records. "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). As noted above, defendant broadly interprets Mental Hygiene Law § 33.13's definition of "clinical record" to encompass the court record of a CPL 330.20 retention proceeding for a track one acquittee because the Mental Hygiene Law requires that information as to defendant's "legal status" be included in the clinical record. But the term "legal status" cannot be read in isolation. Rather, the term must be understood in context and with reference to the words and phrases adjacent to it (see Matter of Kese

Indus. v Roslyn Torah Found., 15 NY3d 485, 491 [2010]). Clearly, the term is one part of a specified list of information – along with information on a defendant's "care," "admission," and "treatment" – to be included within a facility's clinical records and does not define the parameters of court documents to be included in the clinical record or address the court's management of those documents. Stated otherwise, the clinical record created separately by the facility in accordance with Mental Hygiene Law § 33.13 cannot encapsulate the discrete record of a defendant's court retention proceedings, created independently by the court pursuant to CPL 330.20, simply because information of defendant's legal status, essentially derived from the court record, is repeated in the clinical record.

That interpretation also comports with the overall legislative scheme in CPL 330.20 (see Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990]). In enacting CPL 330.20, the legislature intended to strike a balance between the privacy rights of a defendant and the right of the public to know how dangerous mentally ill acquittees are being managed by the court (see Approval Mem, Bill Jacket, L 1980, ch 548 at 2). "As we have already demonstrated, recommitment of an insanity acquittee upon a finding of a dangerous mental disorder has a direct and substantial relationship with the State's legitimate concern for the potentiality of the deterioration of the acquittee's mental condition and relapse into dangerous behavior" (Matter of Francis S., 87 NY2d 554, 564 [1995]). This fits squarely with the traditional understanding that the openness of judicial proceedings, although not absolute, has always been regarded as essential for effective judicial administration (see Sheppard v Maxwell, 384 US 333, 349-350 [1966]; Globe

Newspaper Co. v Superior Court for Norfolk County, 457 US 596, 606 [1982]). In this sense, even a defendant's "hypothetical risk of prejudice or taint cannot justify categorical denial of public access" (Matter of Associated Press v Bell, 70 NY2d 32, 38 [1987]). In short, the legislature provided no automatic sealing requirement of an entire court record in either CPL 330.20 or the Mental Hygiene Law for a track one insanity acquittee and defendant cites no authority for such an obligation.

"Where the Legislature has chosen to temper or abrogate the presumption of openness, it has done so in specific language, and these exceptions have been strictly construed by the courts" (Matter of Herald Co. v Weisenberg, 59 NY2d 378, 381-382 [1983], citing People v Jelke, 308 NY 56, 65 [1954]). In this regard, as previously noted, the sealing provisions for court records of proceedings conducted under articles 9 and 15 are expressly stated (Mental Hygiene Law §§ 9.31 [f]; 15.31 [f]; see also Family Court Act § 166). By analogy, CPL provisions mandating the sealing of records generated by court proceedings conducted pursuant to the CPL are equally unequivocal. For example, upon a youthful offender adjudication, all official records and papers must be sealed (CPL 720.35 [2]; Capital Newspapers, 71 NY2d at 268). Another, CPL 160.50, bestows a general record sealing requirement for designated proceedings under the CPL upon the "termination of a criminal action or proceeding . . . in [a defendant's] favor" (CPL 160.50). These designated proceedings include a verdict of complete acquittal (CPL 160.50 [3] [c] [citing CPL 330.10]), an order setting aside a verdict (id. [3] [e] [citing CPL 330.30]), and an order vacating a judgment (id. [3] [f] [citing CPL 440.10]) but excludes a verdict or plea of not guilty by reason of mental disease or defect.

Throughout our history, "the institutional value" of open judicial proceedings has fostered "an appearance of fairness" (see Globe Newspaper Co., 457 US at 606) and ensured "the public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice" (Lee v Brooklyn Union Publ. Co., 209 NY 245, 248 [1913]).  Interpreting Mental Hygiene Law § 33.13, despite the absence of any supporting statutory language, to provide a blanket sealing requirement of an entire court record that is automatically conferred disregards that tradition.  In balancing the privacy rights of a defendant with the public's right to know how dangerous mentally ill acquittees are managed by the courts, the legislature eschewed an automatic sealing requirement of the court record.  We refuse to disturb that balance today.  Here, defendant demanded an automatic seal in stark contrast to a case specific analysis that demands a court to find good cause sufficient to rebut the legislative presumption of public access for any sealing, in part or whole, upon due consideration of the competing and compelling interests of the public and the parties (see Capital Newspapers, 71 NY2d at 270-271; 22 NYCRR § 216.1).

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, without costs.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order, insofar as appealed from, affirmed, without costs.  Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided February 19, 2019